1   Christopher L. Wanger (State Bar No. 164751)
    E-mail: cwanger@manatt.com
2   Bruce B. Kelson (State Bar No. 202441)
    E-mail: bkelson@manatt.com
3   Ann M. Heimberger (State Bar No. 197060)
    E-mail: aheimberger@manatt.com
4   Kelly L. Knudson (State Bar No. 244445)
    E-mail: kknudson@manatt.com
5   MANATT, PHELPS & PHILLIPS, LLP
    One Embarcadero Center, 30th Floor
6   San Francisco, CA 94111
    Telephone: (415) 291-7400
7   Facsimile: (415) 291-7474

8   Attorneys for Defendant
    Amit Choudhury

9

10                 UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12

13   CLARIUM CAPITAL MANAGEMENT LLC     Case No. _____
    and PETER THIEL,
14
              Plaintiffs,         (Administrative Motion to Be Filed
15                               Pursuant to Civil L.R. 3-12(b) re: Related
          v.                         Action -- Case 4:06-CV-05255-SBA, and
16                               Pending Arbitration)
    AMIT CHOUDHURY and DOES 1-100,
17                               **NOTICE OF REMOVAL UNDER 9**
              Defendants.           **U.S.C. § 205 (INTERNATIONAL**
18                               **ARBITRATION) AND 28 U.S.C. § 1441(a)**
                                **(DIVERSITY OF CITIZENSHIP)**
19

20

21         TO THE CLERK OF THE ABOVE-CAPTIONED COURT:

22         PLEASE TAKE NOTICE that, pursuant to 9 U.S.C. § 205 (international

23   arbitration) and 28 U.S.C. §§ 1332(a)(2) and 1441(a) (diversity of citizenship), Defendant, Amit

24   Choudhury ("Choudhury"), by and through his undersigned counsel, and with a full reservation of

25   any and all rights, claims, and defenses of any nature whatsoever, hereby removes to this Court

26   the state court action as described below:

27         1.       On August 27, 2008, an action was commenced in the Superior Court for the State

28   of California, County of San Francisco, by plaintiffs, Clarium Capital Management LLC

*FILED*
*NOV 12 2008*
*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

*E-filing*

**CV 08 5157 SBA**

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF REMOVAL                                       CASE NO. _____

1  ("Clarium") and Peter Thiel ("Thiel"), against defendant Amit Choudhury ("Choudhury"),

2  captioned *Clarium Capital Management LLC and Peter Thiel v. Amit Choudhury and Does 1-*

3  *100,* Case No. CGC 08-479177 (the "State Court Action").

4      2.    On October 13, 2008, Choudhury was first delivered with suit papers in the State

5  Court Action. Copies of the papers delivered to Choudhury, including a Summons and

6  Complaint and a Summons and Amended Complaint, are attached hereto as <u>Exhibit A</u>.

7  OVERVIEW OF BASES FOR FEDERAL JURISDICTION

8      3.    As described in greater detail below, the State Court Action may be (and hereby is)

9  removed to this Court pursuant to the provisions of 9 U.S.C. § 205, because the subject matter of

10  the State Court Action relates to an arbitration agreement falling under the so-called New York

11  Convention.

12      4.    In addition, as described in greater detail below, the State Court Action may be

13  (and hereby is) removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(a) because it

14  is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332(a)(2), in that

15  it is a civil action between citizens of a State and citizens or subjects of a foreign state. Complete

16  diversity exists in that plaintiff Clarium has the citizenship of its members (California and the

17  Republic of Cyprus, respectively), plaintiff Thiel is a citizen of California, and defendant

18  Choudhury is a citizen of Canada.

19  VENUE

20      5.    Venue is proper pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1441(a), which

21  provide for removal to the district court of the United States for the district and division

22  embracing the place where the action is pending.

23  INTRADISTRICT ASSIGNMENT

24      6.    Pursuant to Civil L.R. 3-2, this action should be assigned to the San Francisco

25  Division or Oakland Division of this Court, as this action arose in the counties served by such

26  divisions.

27  NOTICE

28      7.    Pursuant to 28 U.S.C. § 1446(d), Choudhury will provide written notice of this

1   Notice of Removal to the plaintiffs and will file and serve such notice in the State Court Action.

2   <u>REMOVAL JURISDICTION UNDER 9 U.S.C. § 205</u>

3   8.   The State Court Action arises from and relates to an "Operating Agreement" and

4   to investments made under a related "Subscription Agreement," both executed in 1998 between a

5   predecessor of Clarium, on the one hand, and Amisil Holding Ltd. ("Amisil"), a corporation

6   formed under the laws of, and headquartered in, the Republic of Cyprus, on the other hand. Ex.

7   A, Am. Cmplt. ¶ 2 and note 1.

8   9.   The Operating Agreement contains the following agreement to arbitrate:  "[A]ny

9   controversy or claim arising from or ***relating to*** this Agreement . . . not resolved [through non-

10   binding mediation] shall be resolved through arbitration conducted in accordance with the rules of

11   the American Arbitration Association . . . in San Mateo County, California . . . ." (emphasis

12   added).

13   10.   The sole defendant in the State Court Action, Choudhury, is a citizen of Canada.

14   Choudhury was the representative of Amisil who executed the Operating Agreement and the

15   Subscription Agreement.  He was sued in the State Court Action for conduct he allegedly

16   undertook as the agent and representative of Amisil in the U.S. in connection with entering into

17   the Operating Agreement and Subscription Agreement and in connection with disputes that

18   erupted in 2006 between Amisil and Clarium concerning the former's investment in Clarium

19   under the Operating Agreement.

20   11.   The Operating Agreement concerns, and the related investments under the

21   Subscription Agreement were in, a so-called global macro hedge fund, operating internationally

22   and making investments world-wide.

23   12.   Each claim in the State Court Action alleges misconduct by Choudhury, as the

24   agent and representative of Amisil, either in entering into the Operating Agreement in 1998 or in

25   accusing Clarium and Thiel, in 2006, of misconduct in performing under Agreement. Thus, each

26   of the claims is "relat[ed] to" the Operating Agreement and within the scope of the arbitration

27   provision in the Agreement.

28   13.   Thiel and Choudhury both signed the Operating Agreement, but Thiel did so on

3

1   behalf of Clarium's predecessor and Choudhury did so on behalf of Amisil. Clarium is therefore

2   bound to arbitrate the claims it asserts in the State Court Action. Thiel and Choudhury, in their

3   individual capacities, are not signatories to the Operating Agreement; however, they too are

4   bound to the arbitration provision in the Agreement under theories of agency, corporate law,

5   estoppel and federal law and policy on arbitration, all as explained further below. Choudhury can

6   and, if necessary, will compel Thiel (along with Clarium) to arbitrate the claims they have

7   asserted against Choudhury in the State Court Action.

8         14.   The State Court Action is the outgrowth of litigation commenced in this Court in

9   2006 and an arbitration of the matter as ordered by this Court in 2007 -- an arbitration which is

10  still pending and is now scheduled for hearing in March 2009 (the "Arbitration"). Clarium, Thiel

11  and Amisil are parties to the Arbitration. The history of the litigation, leading to the Arbitration,

12  the State Court Action and this removal of the State Court Action, as pertinent to this Notice

13  under 9 U.S.C. § 205, is as follows:

14        (A)   In August 2006, Amisil filed suit in this Court against
              Clarium, Thiel and two other employees and officers of
15            Clarium (the "2006 Action"). Thiel was sued both
              individually and as the Managing Member of Clarium and
16            its predecessors. That case, U.S. District Court, Northern
              District of California, Case No. C-06-5255-MJJ (now SBA),
17            asserted that Defendants violated federal securities and state
              common and statutory laws in connection with Amisil's
18            investments in both Clarium and in the hedge fund it
              managed. Those investments were made by Choudhury,
19            acting on behalf of Amisil, via his execution of the
              Operating Agreement and Subscription Agreement.
20
          (B)   Defendants in the 2006 Action (the "Thiel Parties") moved
21            for an order compelling arbitration of all claims asserted in
              the case by Amisil and for a stay of the 2006 Action.   (Doc.
22            # 12  in the 2006 Action).

23        (C)   On September 20, 2007 this Court (per Hon. Martin J.
              Jenkins) adopted a 24-page report by Magistrate Judge Chen
24            recommending that the Thiel Parties' motion to stay the
              2006 Action and to compel arbitration be granted. (Doc. #
25            83 in the 2006 Action). The Magistrate Judge's opinion
              held, *inter alia*, that, as a signatory to the agreements
26            containing arbitration clauses, Clarium was entitled to
              compel Amisil, another signatory, to abide by the arbitration
27            clauses. The individual defendants in the case, although
              non-signatories to the agreements, could also compel Amisil
28            to arbitrate its claims against them "under 'an alternative

estoppel theory' -- i.e., 'because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract ... and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations." Order at 7 (citing and quoting *Thomson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 778 (2d Cir.1995); *see also Comer v. Micor, Inc.,* 436 F.3d 1099, 1101 (9th Cir. 2006)(same)). The report enforced the arbitration clauses in favor of the non-signatories on both agency and estoppel grounds. (Doc. # 83 in the 2006 Action.)

(D) Amisil later filed with the American Arbitration Association's Centre for International Dispute Resolution its Demand for Arbitration, reasserting the claims that had been asserted in the 2006 Action in this Court (the "Arbitration").

(E) On November 5, 2007, the Thiel Parties filed in the Arbitration their Answer and Counterclaims against Amisil and, on four of the Counterclaims, the Thiel Parties joined Amisil's authorized representative and agent, Choudhury, in addition to Amisil.

(F) On January 18 2008, the Thiel Parties wrote to the panel in the Arbitration indicating that they were withdrawing the counterclaims asserted against Amit Choudhury.

(G) The panel in the Arbitration later entered an order dismissing without prejudice the counterclaims against Choudhury. The arbitrability of those counterclaims and all other grounds for dismissal raised by Choudhury were left undecided.

(H) On February 27, 2008, the panel in the Arbitration dismissed all but two of the counterclaims asserted against Amisil, including counterclaims that had originally been asserted against Choudhury as well. The grounds for dismissal were the failure of the Thiel Parties to state claims upon which relief could be granted on the four counterclaims that were dismissed.

(I) On August 27, 2008, six months after the rulings by the panel in the Arbitration described above, two of the Thiel Parties, Clarium and Thiel, filed the State Court Action in San Francisco Superior Court against Choudhury, re-asserting four of the claims they had previously asserted as counterclaims against Choudhury and Amisil in the Arbitration, including two counterclaims that were dismissed as against Amisil in the Arbitration for failure to state a claim upon which relief could be granted and two counterclaims which are still proceeding against Amisil in the Arbitration – with final hearing on those two claims now

1    scheduled to commence on March 2, 2009.[1]

2       15. In summary, four of the five claims now asserted against Choudhury in the State

3    Court Action were asserted as counterclaims against him and Amisil in the Arbitration.  Of those

4    four counterclaims, two were dismissed as against Amisil six months before they were reasserted

5    against Choudhury in the State Court Action. The other two counterclaims, as against Amisil, are

6    proceeding to final hearing in the Arbitration in March, 2009.  And the fifth and final claim

7    against Choudhury in the State Court Action is brought pursuant to California law which the

8    panel held eight months ago is not applicable to the claims between these parties.

9       16.    Under the facts and circumstances outlined above, 9 U.S.C. § 205 applies to the

10   State Court Action and to this Notice of Removal.  In pertinent part, § 205 provides that:

11          Where the subject matter of an action or proceeding pending in a
            State court relates to an arbitration agreement or award falling
12          under the [New York] Convention, the defendant or the defendants
            may, at any time before the trial thereof, remove such action or
13          proceeding to the district court of the United States for the district
            and division embracing the place where the action or proceeding is
14          pending. The procedure for removal of causes otherwise provided
            by law shall apply, except that the ground for removal provided in
15          this section need not appear on the face of the complaint but may be
            shown in the petition for removal.
16

17   *See also generally Beiser v. Weyler* (5th Cir. 2002) 284 F.3d 665, 670.

18       17.    To serve as a basis for removal under Section 205, an arbitration agreement must

19   meet two requirements.  First, the arbitration agreement must "fall under the Convention," which

20   requires some connection to foreign entities or international commerce. *Hawkins v. KPMG* (N.D.

21   Cal. 2006) 423 F. Supp. 2d 1038, 1044; *Certain Underwriters at Lloyd's London v. Argonaut Ins.*

22   *Co.* (N.D. Cal. 2003) 264 F. Supp. 2d 926, 932.   Second, the arbitration agreement  must "relate

23   to" the subject matter of the lawsuit to be removed to federal court. *Hawkins* 423 F. Supp. 2d at

24   1044.

25       18.    The first requirement is met in this case by several facts: (1) Amisil, one of the

26

27   [1]   The fifth claim asserted against Choudhury in the State Court Action by Clarium and Thiel is
     based on California Business & Professions Code Section 17200.  The panel in the Arbitration
28   held in its February 27, 2008 Order that such claims are not available under the law applicable
     substantively to the parties' Arbitration – that is, the law of Delaware.

1    parties to the Operating Agreement in which the operative arbitration clause is found, is a Cypriot

2    corporation; (2) Choudhury, the agent who allegedly committed the breaches of duty alleged in

3    the State Court Action on behalf of his Cypriot principal, is Canadian; and (3) the investments in

4    question related to the Operating Agreement were in an international or "global macro" hedge

5    fund and in the entity managing that fund.  The investment and business activities were all within

6    the ambit of "international commerce," within the meaning of governing precedent.[2]

7         19.    As to the second requirement, an agreement in which an arbitration clause appears

8    "relates to" claims in a lawsuit if, "there is a reasonable possibility that defendant[] will be able to

9    assert the arbitration clause to compel arbitration of plaintiff[s'] claims in [the] lawsuit."

10   *Hawkins,* 423 F. Supp. 2d at 1047.  In this case, there is far more than a "reasonable possibility"

11   that Choudhury -- though a non-signatory of the Operating Agreement -- will succeed in

12   enforcing the arbitration clause in that agreement against both Clarium, a signatory, and Thiel, a

13   non-signatory.  Clarium and Thiel both asserted two years ago in the Arbitration that those very

14   claims against Choudhury *were* arbitrable -- and under the very same arbitration clause that

15   Choudhury now invokes.

16        20.    One who is not a signatory to an agreement containing a covenant to arbitrate may

17   nonetheless enforce that covenant against one who is a signatory and even against one who is not

18   a signatory -- under proper circumstances. *See Hawkins,* 423 F. Supp. 2d at 1048; *see also Global*

19   *Santa Fe Drilling Co. v. Ins. Co. of Pa.* (N.D. Cal. 2006) U.S. Dist. LEXIS 2174.

20        21.    The claims by Clarium against Choudhury are for conduct he allegedly undertook

21   in entering into the Operating Agreement on behalf of Amisil in 1998 and in connection with his

22   conduct in connection with disputes which arose between Amisil and Clarium in 2006 relating to

23   Clarium's performance (or failure to perform) under the Operating Agreement.  Clarium's claims

24   are "related" to the Operating Agreement and thus are claims as to which Choudhury stands more

25   than a "reasonable possibility" of compelling arbitration.

26        22.    As to Thiel, Judge Chen observed in his report in the 2006 Action, "a nonsignatory

---

27   [2]   When the Thiel Parties moved to compel arbitration of Amisil's claims in the 2006 Action,
        they pointed out that:  "As a contract between citizens of different states and citizens of
28      foreign countries . . . the Operating Agreement is subject to the FAA. 9 U.S.C. § 1."

1   may be bound by an agreement to arbitrate under ordinary contract and agency principles, such as

2   "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5)

3   estoppel." *See* Doc. # 83 in the 2006 Action, citing *Comer v. Micor, Inc.*, 436 F.3d 1099, 1101

4   (9th Cir. 2006). Thiel sues for defamation of his business reputation as the Manager of Clarium

5   and in connection with the Operating Agreement. Furthermore, the Court in *Hawkins* held:

> [W]here a lawsuit against non-signatories is inherently bound up
> with claims against a signatory, the court should compel arbitration
> in order to avoid denying the signatory the benefit of the arbitration
> clause, and in order to avoid duplicative litigation which
> undermines the efficiency of arbitration.

9   423 F. Supp. 2d at 1050. Here, Thiel's claims against Amisil – which have been and are now

10  proceeding in the Arbitration – are "inherently bound up" with Thiel's parallel claims in the State

11  Court Action against Choudhury. Indeed, the two remaining counterclaims by Thiel against

12  Amisil in the Arbitration are factually and legally ***identical*** to two of the claims against

13  Choudhury in the State Court Action, and the remaining claims against Choudhury in the State

14  Court Action are – or would be – barred as a matter of law by prior rulings in the Arbitration.

15  Amisil would be deprived of the benefit of the arbitration clause to which it agreed if its agent,

16  Choudhury, must defend outside of arbitration his conduct on behalf of Amisil on claims against

17  him that are within the arbitration clause to which Amisil is a party.

18      23.     Under the facts and circumstances outlined above, the State Court Action is

19  properly removed to this Court under 9 U.S.C. § 205.

20      REMOVAL JURISDICTION UNDER 28 U.S.C. §§ 1332 AND 1441

21      24.     Independent of removal to this Court of the State Court Action as a matter subject

22  to international arbitration, the action is also hereby removed by this Notice of Removal under 28

23  U.S.C. § 1441(a), because diversity of citizenship, within the meaning of 28 U.S.C. § 1332(a)(2),

24  existed between the parties at the time that Plaintiffs commenced the State Court Action and

25  continues to exist as of the time of this removal.

26      25.     The first date upon which Choudhury received a copy of any of the papers in the

27  State Court Action was October 13, 2008. At that time, near the end of his deposition being taken

28  in the Arbitration, Choudhury was delivered a Summons and a copy of the Amended Complaint

8

1   in the State Court Action.

2       26.     Plaintiff Clarium – at all times pertinent to the claims asserted in the State Court

3   Action, including at the time that action was commenced and at present – was and still is the

4   successor to a limited liability company, and at all such times since Clarium was formed, in 2002,

5   it was and it still is itself such a limited liability company, formed under the laws of Delaware,

6   with its principal place of business in California.  As of the time the State Court Action was

7   commenced and at the time this Notice of Removal is filed, Clarium had and has two members,

8   one of which is Amisil, a citizen of the Republic of Cyprus, and the other of which is Thiel, a

9   citizen of California.

10      27.     Plaintiff Thiel is a citizen of the U.S. and of the state of California, and he held

11  such citizenships as of the time the State Court Action was commenced and he sill holds those

12  citizenships as of the time of this Notice of Removal.

13      28.     Defendant Choudhury held his citizenship in Canada as of the time the State Court

14  Action was commenced and continues to hold such citizenship as of the time this Notice of

15  Removal is filed. Choudhury has never been admitted to the U.S. as a permanent resident.

16      29.     As provided in 28 U.S.C. § 1441(a), "[f]or purposes of removal under this chapter,

17  the citizenship of defendants sued under fictitious names shall be disregarded."  The naming of

18  "DOES 1-100" in the Amended Complaint in the State Court Action is thus without consequence

19  to this removal.

20      30.     The matter in controversy, including the claims asserted in the Amended

21  Complaint in the State Court Action, exceeds the sum of seventy–five thousand dollars

22  ($75,000.00), exclusive of interest and costs.  Ex. A hereto, Am. Cmplt. ¶ 1 (averring that

23  Choudhury's alleged misconduct asserted in the State Court Action has "seriously injured

24  Clarium and has inflicted considerable reputational damage on Plaintiffs, causing the loss of

25  millions of dollars in revenue.").

26      31.     Based upon the foregoing, both plaintiffs in the State Court Action possess

27  California citizenship (and, as to Clarium, citizenship in Cyprus as well).  The sole defendant in

28  the State Court Action, Choudhury, is a Canadian citizen, and is not a citizen of the United States

9

1   or California.  Therefore, the State Court Action is between citizens of a State and citizens of a

2   foreign state, within the purview of 28 U.S.C. § 1332(a)(2), and federal jurisdiction over the

3   subject matter of the State Court Action therefore exists.

4        32.    Removal of the State Court Action to this Court is thus authorized by 28 U.S.C.

5   § 1441(a).

6        WHEREFORE, Defendant Choudhury respectfully notifies this Court that

7   pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1441(a) he has removed the above action from the

8   Superior Court of the State of California, County of San Francisco, to this Court.

9   Dated:    November 12, 2008        MANATT, PHELPS & PHILLIPS, LLP

10

11                              By:  /S/

12                                   Bruce B. Kelson

13                              Attorneys for Defendant
                                Amit Choudhury

14

15

16   90039318.1

17

18

19

20

21

22

23

24

25

26

27

28

10

NOTICE OF REMOVAL                                    CASE NO. _____

# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**NOTICE TO** ~~Defendants~~ *california kesident, and*
**(AVISO AL DEMANDADO):** *Does 1-100*
AMIT CHOUDHURY

*Plantiffs*

**YOU ARE BEING SUED BY**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
CLARIUM CAPITAL MANAGEMENT LLC and PETER THIEL

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia. Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | **CASE NUMBER:** *(Número del Caso):* CGC 08 - 479177 |
| --- | --- |

Superior Court of California
County of San Francisco
400 McAllister Street
San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Howard S. Caro (SBN 202082)                    Tel: (415) 772-6000        Fax: (415) 772-6268
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104

**DATE:** August 27, 2008              GORDON PARK-LI   Clerk, by _Wilma C. Bautista_ , Deputy
*(Fecha)*                                              *(Secretario)*                                  *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL: SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN FRANCISCO]

**NOTICE TO THE PERSON SERVED: You are served**
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
    under:  ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
            ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): |
|---|
| Howard S. Caro (SBN 202082) |
| Nathaniel R. Spencer-Mork (SBN 226886) |
| Heller Ehrman LLP |
| 333 Bush Street, San Francisco, CA 94104-2878 |

TELEPHONE NO.: (415) 772-6000   FAX NO.: (415) 772-6268

ATTORNEY FOR (Name): Clarium Capital Management LLC and Peter Thiel

**FILED**
Superior Court of California
AUG 2 7 2008
GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco

STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME: Clarium Capital Management LLC and Peter Thiel v. Amit Choudhury

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CGC 08-479177 |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☒ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☒ monetary   b. ☒ nonmonetary; declaratory or injunctive relief   c. ☒ punitive
4. Number of causes of action (specify): 5  Tortious Interference; Defamation; Fraud; Negligent Misrep.; Unfair Bus. Practices
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: August 27, 2008

Howard S. Caro
(TYPE OR PRINT NAME)
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

1  Howard S. Caro (SBN 202082)
   Nathaniel R. Spencer-Mork (SBN 226886)
2  Benjamin T. Diggs (SBN 245904)
   HELLER EHRMAN LLP
3  333 Bush Street
   San Francisco, CA  94104-2878
4  Telephone: +1.415.772.6000
   Facsimile: +1.415.772.6268
5  Howard.Caro@hellerehrman.com
   Nate.SpencerMork@hellerehrman.com
6  Benjamin.Diggs@hellerehrman.com

7  Robert B. Hawk (SBN 118054)
   HELLER EHRMAN LLP
8  275 Middlefield Road
   Menlo Park, CA 94025-3506
9  Phone: +1.650.324.7000
   Facsimile: +1.650.324.0638
10 Robert.Hawk@hellerehrman.com

11 Attorneys for Plaintiffs
   Clarium Capital Management LLC and Peter Thiel

F I L E D
San Francisco County Superior Court

AUG 2 7 2008

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

JAN 3 0 2009 - 9:00 AM

SUMMONS ISSUED DEPARTMENT 212

CGC 08-479177

12                SUPERIOR COURT FOR THE STATE OF CALIFORNIA

13                          SAN FRANCISCO COUNTY

14

15
   CLARIUM CAPITAL MANAGEMENT LLC
16 and PETER THIEL,
                                              COMPLAINT FOR DAMAGES:
17                            Plaintiffs,
                                              1.  TORTIOUS INTERFERENCE
18      v.                                        WITH BUSINESS ADVANTAGE
                                              2.  DEFAMATION
19 AMIT CHOUDHURY, a California resident,      3.  FRAUD
   and DOES 1-100,                             4.  NEGLIGENT
20                                                MISREPRESENTATION
                             Defendants.       5.  UNFAIR BUSINESS
21                                                PRACTICES (CAL. B&P § 17200
                                                  ET SEQ.)
22

23

24

25

26

27

28

Heller
Ehrman
White &
McAuliffe LLP

COMPLAINT FOR DAMAGES

Plaintiffs Clarium Capital Management LLC ("Clarium") and Peter Thiel (collectively, "Plaintiffs") allege as follows:

## I.  NATURE OF THE ACTION AND RELIEF SOUGHT

1. Amit Choudhury ("Choudhury"), purporting to act as "Senior Vice President" of Amisil Holdings, Ltd. ("Amisil"), has engaged in a pattern of wrongful, deceptive, and defamatory conduct designed to extort money from Clarium and its principals and/or employees. Choudhury's false and defamatory public statements regarding Plaintiffs have seriously injured Clarium and have inflicted considerable reputational damage on Plaintiffs, causing the loss of millions of dollars in revenue.

2. Amisil originally invested in Clarium in 1998 in connection with its investment in a hedge fund, Thiel Capital International LLC (the "Fund"), managed by Clarium (then known as Thiel Capital Management, LLC).[1]  Clarium agreed to the investment on the basis of representations made by Choudhury about Amisil's qualifications to invest in Clarium's Fund, including representations regarding the amount of assets Amisil had at the time of investment, the competence and sophistication of Amisil, and Choudhury's role with Amisil. These representations were false, and Defendant knew them to be false when made.

3. Amisil redeemed its investment in the Fund after less than a year, and, pursuant to the terms of its agreement with Clarium, its potential interest in Clarium simultaneously ceased vesting. As a result, Amisil's unvested interest in Clarium was extinguished, leaving Amisil with only a small fraction of its original potential interest in Clarium, which interest was subsequently extinguished. Since its divestment from the Fund in 1999, Amisil contributed nothing to the business of Clarium and until 2006, had virtually no communications with Clarium or its employees.

4. In 2006, facing severe financial pressure, including fallout from the collapse

---

[1] All references in this pleading to Clarium incorporate by reference Thiel Capital Management.   All references to the Fund incorporate by reference both Thiel Capital International, LLC, and its successor, Clarium Capital LP.

Heller
Ehrman LLP

1

1  of a severely under-funded software start-up he founded and demands from a former friend

2  to repay a $1 million promissory note, Choudhury decided to try to convert Amisil's former

3  relationship with Clarium into a windfall payout. As part of that plan, he initiated a public

4  smear campaign against Plaintiffs based on deliberate distortion of the facts surrounding

5  Amisil's investment in Clarium, with the intent of coercing a nuisance settlement from

6  Plaintiffs.

7        5.  Choudhury's smear campaign was merely one episode in a broader pattern of

8  financial chicanery and dissimulation by Defendant. Choudhury's other wrongful conduct

9  led to the implosion of Defendant's own hedge fund due to fraud, a resulting lawsuit by

10  bilked investors and eventual judgment against Choudhury, and a separate recent jury

11  verdict and judgment for fraud and punitive damages in favor of the former friend holding

12  Choudhury's $1 million note, the principal of which was fraudulently employed by

13  Choudhury for his own purposes in contravention of the creditor's instructions and never

14  repaid. Choudhury's practice of abusive, baseless litigation and mendacity is further

15  demonstrated by (yet another) judgment against him in a fee dispute with his lawyers,

16  which judgment also penalized Choudhury for abuse of the appeals process.

17        6.  Based on Choudhury's wrongful conduct aimed at Plaintiffs, this Complaint

18  asserts causes of action for tortious interference with business advantage, defamation, fraud,

19  and negligent misrepresentation. Defendant's wrongs have interfered with the business and

20  damaged the reputation of Clarium and Mr. Thiel, causing substantial damages.

21  II.   **PARTIES**

22        7.  Plaintiff Clarium Capital Management LLC is a limited liability company

23  organized and existing under the laws of the state of Delaware with its principal place of

24  business in San Francisco, California.

25        8.  Plaintiff Peter Thiel was at all relevant times the majority member and

26  Managing Member of Clarium and is an individual who resides in San Francisco,

27  California.

28

Heller
Ehrman LLP

2

COMPLAINT FOR DAMAGES

9. Defendant Choudhury is an individual residing in San Francisco, California.

III.    FACTUAL ALLEGATIONS

A.    Amisil's Investment and Redemption of That Interest

10. In 1996, Clarium was formed as an investment adviser to oversee the investments of the Fund.  In connection with investments in the Fund, Clarium offered initial Fund investors the chance also to obtain a vesting equity interest in Clarium, the management company for the Fund.  Pursuant to the document governing the administration of Clarium (the Operating Agreement) that interest in Clarium would vest over the course of four years.  The purpose of the vesting provisions was to lengthen the tenure of investments in the Fund by rewarding committed investors with a share in the economics of Clarium, the management company.

11. Pursuant to a Subscription Agreement executed by Defendant on Amisil's behalf, Amisil invested $300,000 on or about March 1, 1998: $297,000 of that initial investment was an investment in the Fund, and $3,000 was an investment in Clarium.  The $3,000 investment in Clarium afforded Amisil a chance to obtain a maximum of 1% interest in Clarium, subject to the four-year vesting schedule set forth in the Operating Agreement.

12. Amisil fully and voluntarily redeemed its interest in the Fund on or about February 1, 1999 — *before* the first anniversary of its investment.  According to the Operating Agreement, Amisil's financial participation in the Management Company after withdrawing its investment in the Fund was reduced to 10% of its original allotment of 1% — *i.e.*, 0.1% — and its unvested interest in Clarium was extinguished.

B.    Post-Redemption Conduct by Defendant

13. In May 2002, Clarium communicated with Choudhury regarding the repurchase of Amisil's 0.1% stake in Clarium, and Choudhury, on behalf of Amisil, agreed to accept the buy-out.  Clarium accordingly tendered payment, which Amisil received.

14. Amisil, however, did not acknowledge the tender of the check or its prior agreement.  Clarium then sent a letter to Amisil (via Defendant) in January 2004 (the "January 2004 Letter"), asking Amisil to either confirm the termination of its relationship

Heller
Ehrman LLP

1   with Clarium per the prior agreement or, assuming that Amisil insisted upon reneging on its

2   prior agreement, Clarium indicated that contribution of Amisil's share of accumulated

3   expenses would be required.  Neither Defendant nor anybody else on behalf of Amisil

4   responded to the January 2004 Letter

5         15. Later, in 2006 — with Defendant already crippled by one judgment for fraud

6   and coming under increasing pressure to repay a fraudulently obtained $1 million

7   promissory note — Defendant approached Plaintiffs to demand a buyout of Amisil's

8   supposed interest in Clarium.  Notwithstanding its belief that Amisil's claim of such an

9   interest had been resolved by prior agreement, Plaintiffs, in the interest of compromise,

10  negotiated in good faith to resolve Amisil's sudden and contradictory assertion of an

11  ownership interest in Clarium.

12        16. On August 28, 2006, in a sudden break from those negotiations, Amisil

13  announced a suit against Clarium, Thiel and others, misleadingly claiming, among other

14  allegations, that Clarium had not paid it for the value of its membership interest.

15     **C.     Defendant's Wrongful Conduct**

16        17. On the same day that it filed its suit, Amisil and Choudhury issued a press

17  release (the "August 28 Press Release") containing defamatory and otherwise injurious

18  statements from Choudhury regarding the purported conduct of Clarium and its officers.

19  Choudhury made these statements for the purpose of damaging the business and tarnishing

20  the reputation of Clarium, Thiel, and Clarium's employees.  The release (a copy of which is

21  attached as Exhibit A hereto) contained numerous misstatements designed to mislead the

22  public into believing that Clarium and Mr. Thiel had perpetrated a wrong against Amisil

23  and misrepresented important facts regarding Choudhury and Amisil.

24        18. In the August 28 Press Release, Choudhury stated:  "Peter Thiel has been

25  playing an elaborate shell game with our investment for the last eight years. Amisil has not

26  received a single distribution from Clarium, while he has skimmed tens of millions of

27  dollars out of Clarium into his own pockets. There's been no pay for us, and he's been no

28  pal." These statements are false; Mr. Thiel has done nothing of the sort.  Rather, Mr.

Heller
Ehrman LLP

4

COMPLAINT FOR DAMAGES

1  Thiel's work has only benefited Clarium, which under his guidance has prospered.  Nor has

2  Mr. Thiel skimmed tens of millions of dollars (or any amount at all) from Clarium.  To the

3  contrary, Mr. Thiel has contributed millions of his own dollars towards the working capital

4  of Clarium — while Amisil and Choudhury contributed nothing.

5          19. The August 28 Press Release also misleadingly asserted that Amisil retained

6  "a full membership interest" in Clarium.  This statement, as Defendant knew, contravened

7  the clear terms of the governing documents of Clarium (which Amisil and Defendant had in

8  their possession) and the terms of Amisil's investment in Clarium in light of Amisil's total

9  redemption from the Fund in 1999.  Indeed, during the course of negotiations, Plaintiffs had

10  repeatedly and in detail explained to Defendant why Amisil could not — even under

11  Amisil's and Defendant's own version of the facts — have anything approaching a "full

12  membership interest" in Clarium.  Nevertheless, nowhere in the August 28 Press Release

13  did Defendant reveal the existence of the vesting schedule that drastically reduced its

14  purportedly "full" interest in Clarium.  The August 28 Press Release also, with no basis

15  whatsoever, stated that Amisil's damages were estimated "to be as much as $18 million," a

16  valuation of damages that even under Amisil's and Defendant's own theory of the case was

17  grossly overstated; indeed, in open court and under oath Choudhury — who approved the

18  release — subsequently testified that he had "no idea" whether the claim was worth $5

19  million, much less $18 million, and in fact revealed he had no real basis for calculating the

20  damages he asserted in the August 28 Press Release.

21          20. The August 28 Press Release also misleadingly failed to mention that Clarium

22  had attempted to resolve the matter in accordance with the terms of the Operating

23  Agreement and that the appraisal process had only failed because Amisil had not negotiated

24  in good faith, had insisted upon totally unreasonable terms, and had breached its promise to

25  be bound by the terms of the Operating Agreement by abandoning the appraisal (or

26  mediation and arbitration) in favor of filing a lawsuit in federal court.   The August 28

27  Press Release also misleadingly stated that Amisil had "never received any annual or

28  quarterly financial documents relating to this company [Clarium] or its interests," despite

Heller
Ehrman LLP

5

COMPLAINT FOR DAMAGES

1   the fact that just weeks before the press release was issued and as part of its efforts to

2   compromise, Plaintiffs had released pertinent financial data to Amisil and Defendant.

3        21. What is more, the August 28 Press Release misleadingly claimed that Amisil

4   did not receive "a single distribution" from the Management Company, omitting to disclose

5   that nothing in the Operating Agreement entitled any investor to any distributions.

6        22. The false and defamatory statements contained in the August 28 Press Release

7   were materially misleading and intended to damage Plaintiffs' business relationships and

8   reputations. Choudhury has continued to defame Clarium and Mr. Thiel to potential and

9   current investors and to the public at large, encouraging investors not to invest with Clarium

10   or to withdraw investments, by making false and misleading statements about Clarium.

11   Choudhury also made similar false and misleading statements to certain of Clarium's

12   counterparties in an attempt to damage the firm's relationship with its brokers, creditors,

13   and other members of the financial community.

14        23. Choudhury's conduct has caused significant harm to Clarium and to Mr.

15   Thiel. Clarium has lost the opportunity to earn fees on the management of hundreds of

16   millions of dollars as a proximate result of Choudhury's activities and has been forced to

17   expend substantial effort and expense combating the effects of Choudhury's injurious

18   falsehoods. As Clarium's general partner, Mr. Thiel has suffered proximately from these

19   same injuries. Mr. Thiel, a prominent venture capitalist, has also experienced reputational

20   harm due to Choudhury's intentional misstatements regarding Mr. Thiel's conduct.

21        24. Plaintiffs have only learned of the falsity of many of Defendant's statements

22   during a federal trial in which Choudhury testified in August 2008 and/or during discovery

23   that took place during the Summer of 2008 in related arbitration proceedings. Until

24   compelled by judicial and arbitration processes to admit the truth in 2008, Choudhury has

25   routinely concealed or misrepresented the facts to Plaintiffs, who could not have known the

26   extent of the dissmulations perpetrated by Choudhury that are at the core of this matter. To

27   the extent any statute of limitations began to run on any statement made by Choudhury,

28   such limitations period was stayed and tolled from the filing of Amisil's lawsuit against

1  Plaintiffs and as a result of the order of the court staying that action pending arbitration,

2  until, at a minimum, the time for filing counterclaims in that proceeding.

## First Claim for Relief

### (Tortious Interference with Prospective Business Advantage)

### (On Behalf of Clarium)

6  25. Plaintiffs re-allege paragraphs 1-24 of this Complaint as if fully set forth

7  herein.

8  26. Clarium has business relationships with hundreds of existing investors in the

9  funds it manages and continues to have communications with prospective qualified

10 investors on a regular basis; it also has critical relationships with counterparties necessary to

11 the conduct of its business.  Defendant Choudhury has been, at all relevant times, aware of

12 these facts.

13 27. Defendant intended to disrupt Clarium's relationships with its existing and

14 prospective investors, as well as Clarium's counterparties by making false accusations about

15 Plaintiffs to the public.

16 28. As a result, Clarium's relationships with its existing and prospective investors

17 have been adversely affected.  Defendant' misstatements and misconduct have been a

18 contributing factor in the redemption of funds by current investors and the delay,

19 cancellation, and/or reduction of new investments by prospective investors.

20 29. As a result, Plaintiffs have suffered damages in an amount to be proven.

## Second Claim for Relief

### (Defamation)

23 30. Plaintiffs re-allege paragraphs 1-29 of this Complaint as if fully set forth

24 herein.

25 31. In August 2006, Amisil issued a press release containing derogatory and

26 defamatory statements about Plaintiffs by Defendant Choudhury.  Defendant also made

27 derogatory and defamatory statements regarding the ethics and conduct of Plaintiffs at

28 industry events and elsewhere.

Heller
Ehrman LLP

COMPLAINT FOR DAMAGES

32. The statements made by Defendant referred to in the preceding paragraph were false.

33. The statements were of and concerning Clarium and Mr. Thiel, and were defamatory to each.

34. Indeed, because the published statements made allegations injurious to the business and profession of Plaintiffs, they are defamatory per se.

35. The statements were published to third parties. Third parties who heard these statements understood that they were intended to be defamatory. As a result of the publication of these false comments, Plaintiffs have suffered reputational and actual damages to be determined.

### Third Claim for Relief

### (Fraud)

### (On Behalf of Clarium)

36. Plaintiffs re-allege paragraphs 1-35 of this Complaint as if fully set forth herein.

37. Since the inception of Amisil's relationship with Clarium, Defendant has made numerous false and misleading statements and omissions regarding Amisil. Clarium relied on such statements and omissions to its considerable detriment.

38. In particular, Defendant knowingly represented that Amisil and its agents were sophisticated parties capable of making an informed decision regarding investment in the Fund and the risks, rewards, rights, and obligations attendant to hedge fund investing. Among the specific representations Defendant made in signing the Subscription Agreement was the representation that Amisil had "such knowledge and experience in financial and business matters that the undersigned is capable of evaluating the merits and risks" of its investment with the Fund and Clarium. Also, during the course of pre-investment meetings with Mr. Thiel, Choudhury represented that he was a highly competent investor, not least because he ran his own hedge fund. Amisil also represented that it held over $5 million in assets. Finally, Choudhury represented that he was Amisil's "Senior Vice President" when

Heller
Ehrman LLP

8

1   in fact he did not hold that or any other title with Amisil, which Choudhury finally admitted

2   in 2008.  Plaintiffs only learned of the falsity of Choudhury's representations during the

3   August 2008 trial at which Choudhury testified and/or during discovery in the arbitration

4   proceeding between Amisil and Plaintiffs.

5       39.  In making those and other representations in the Subscription Agreement,

6   Defendant intended to induce Clarium to accept Amisil's investment, as investor

7   sophistication was a prerequisite for making an investment in the Fund and the Management

8   Company.

9       40.  Defendant's statements set forth above were false and misleading.

10  Defendant's inability to parse unambiguous provisions of the Operating Agreement (such as

11  those pertaining to distributions and vesting) or to understand the difference between the

12  Fund (into which 99% of Amisil's investment was directed) and Clarium itself (into which

13  only 1% of its initial investment went) demonstrate that neither Choudhury nor Amisil are

14  the sort of investors they represented themselves to be.  The misleading nature of the

15  representations by Choudhury, purportedly acting on behalf of Amisil, is underscored by the

16  failure of Choudhury's purported hedge fund, a subsequent civil suit brought by a bilked

17  investors for fraud relating to that hedge fund, and the resulting judgment against

18  Choudhury.  The recent jury verdict and judgment against Choudhury for his fraudulent

19  solicitation of nearly $1 million from a former friend further confirm the misleading nature

20  of these representations, as do the recently discovered facts that Choudhury fabricated

21  achievements on his resume (including those relating to the financial success of his

22  enterprises) and his title at Amisil, both for the purpose of inducing others to believe in his

23  authority, status, and sophistication.  Neither Clarium nor its employees could have known

24  of Defendant's lack of sophistication or history of deception until the Spring 2006 at the

25  earliest, in light of Defendant's duplicitous representations to the contrary.

26      41. Based on Defendant's misrepresentations, Clarium held a good-faith belief

27  that Choudhury and Amisil were sophisticated investors holding at least $5 million who

28  could evaluate, and had accepted, the risks and rewards of hedge fund investing.  Clarium

Heller
Ehrman LLP

COMPLAINT FOR DAMAGES

1  relied on these representations to its detriment.  But for these representations, Amisil would

2  not have been allowed to commit capital to either the Fund or the Management Company.

3  and, had Clarium discovered the truth earlier, it would have taken action to immediately

4  terminate its relationship with Amisil.

5       42. Clarium suffered damages to be proven as a result of Defendant's fraud.

6  **Fourth Claim for Relief**

7  (Negligent Misrepresentation)

8  (On Behalf of Clarium)

9       43. Plaintiffs re-allege paragraphs 1-42 of this Complaint as if fully set forth

10  herein.

11       44.  Defendant owed a duty to accurately disclose that neither he nor Amisil were

12  the skilled, honest, sophisticated investors he made them out to be.

13       45. Defendant acted negligently in making said representations, as he had no

14  reasonable grounds for believing its representations were true.

15       46. Clarium relied on this misinformation to its detriment and allowed Amisil to

16  invest in the fund and become a member of the Management Company.

17       47. As a result of Defendant's negligent representations and omissions, Clarium

18  has been damaged in an amount to be proven at trial.

19  **Fourth Claim for Relief**

20  (California Business & Professions Code § 17200)

21       48. Plaintiffs re-allege paragraphs 1-47 of this Complaint as if fully set forth

22  herein.

23       49. The business practices and conduct of Defendant described above (the "Unfair

24  Business Practices") violate section 17200 of California's Business & Professions Code.

25       50. Defendant's Unfair Business Practices are unfair because they offend an

26  established public policy and are immoral, unethical, oppressive, unscrupulous and

27  substantially injurious to Plaintiffs.  Further, there is no utility derived from Defendant's

28  Unfair Business Practices, while the gravity of the harm to Plaintiffs is enormous.

Heller
Ehrman LLP

10
COMPLAINT FOR DAMAGES

51. Defendant's Unfair Business Practices are unlawful because, *inter alia*, they constitute fraud and negligent misrepresentation.

52. Defendant's Unfair Business Practices are fraudulent because they are likely to deceive members of the public and, in fact, fact did deceive Plaintiffs.

53. As a result of Defendant's unfair, unlawful and fraudulent business practices, Plaintiffs have suffered injury and have lost money and property.

54. Plaintiffs are entitled to restitution and injunctive relief as may be necessary to restore to them the money and property which was wrongfully acquired by Defendant's Unfair Business Practices and/or in which Plaintiffs have a vested interest. Additionally, Plaintiffs should be awarded restitutionary disgorgement of any and all profits Defendant may have gained through interest or earning on the money and property Defendant wrongfully acquired.

## Prayer for Relief

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. For general and consequential damages according to proof;

2. For restitution and disgorgement;

3. For punitive and exemplary damages according to proof;

4. For injunctive relief prohibiting further defamatory public statements by Choudhury;

5. For prejudgment interest in an amount according to proof;

6. For attorneys' fees and costs of suit incurred herein; and

7. For such other relief as deemed just and proper.

//
//
//
//
//
//
//
//

Heller
Ehrman LLP

COMPLAINT FOR DAMAGES

August 27, 2008

HELLER EHRMAN LLP

By _____
Howard S. Caro

Attorneys for Plaintiffs
CLARIUM CAPITAL MANAGEMENT LLC and
PETER THIEL

Heller
Ehrman LLP

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

*Defendants* Calivornia resedent, and Docs 1-100

**NOTICE TO**
*(AVISO AL DEMANDADO):*
AMIT CHOUDHURY

*Plaintiffs*

**YOU ARE BEING SUED BY**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CLARIUM CAPITAL MANAGEMENT LLC and PETER THIEL

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia. Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Superior Court of California
County of San Francisco
400 McAllister Street
San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):* 08 - 479177

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Howard S. Caro (SBN 202082)          Tel: (415) 772-6000     Fax: (415) 772-6268
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104

DATE: August 27, 2008                    Clerk, by _____, Deputy
*(Fecha)*                                *(Secretario)*         CRISTINA BAUTISTA          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

---

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

1  Howard S. Caro (SBN 202082)
   Nathaniel R. Spencer-Mork (SBN 226886)
2  Benjamin T. Diggs (SBN 245904)
   HELLER EHRMAN LLP
3  333 Bush Street
   San Francisco, CA  94104-2878
4  Telephone: +1.415.772.6000
   Facsimile: +1.415.772.6268
5  Howard.Caro@hellerehrman.com
   Nate.SpencerMork@hellerehrman.com
6  Benjamin.Diggs@hellerehrman.com

7  Robert B. Hawk (SBN 118054)
   HELLER EHRMAN LLP
8  275 Middlefield Road
   Menlo Park, CA 94025-3506
9  Phone: +1.650.324.7000
   Facsimile: +1.650.324.0638
10 Robert.Hawk@hellerehrman.com

11 Attorneys for Plaintiffs
   Clarium Capital Management LLC and Peter Thiel

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

AUG 2 8 2008

GORDON PARK-LI, Clerk
BY:
    Deputy Clerk

12

13                SUPERIOR COURT FOR THE STATE OF CALIFORNIA

14                          SAN FRANCISCO COUNTY

15

16 CLARIUM CAPITAL MANAGEMENT LLC          CASE NO.: CGC 08-479177
   and PETER THIEL,

17                         Plaintiffs,

18        v.                                **AMENDED COMPLAINT FOR
                                            DAMAGES:**
19 AMIT CHOUDHURY, a California resident,
   and DOES 1-100,                          1. **TORTIOUS INTERFERENCE
20                                              WITH BUSINESS ADVANTAGE**
                          Defendants.       2. **DEFAMATION**
21                                          3. **FRAUD**
                                            4. **NEGLIGENT
22                                             MISREPRESENTATION**
                                            5. **UNFAIR BUSINESS
23                                             PRACTICES (CAL. B&P § 17200
                                             ET SEQ.)**
24

25

26

27

Heller
Ehrman LLP  28

Plaintiffs Clarium Capital Management LLC ("Clarium") and Peter Thiel (collectively, "Plaintiffs") allege as follows:

## I.   NATURE OF THE ACTION AND RELIEF SOUGHT

1.   Amit Choudhury ("Choudhury"), purporting to act as "Senior Vice President" of Amisil Holdings, Ltd. ("Amisil"), has engaged in a pattern of wrongful, deceptive, and defamatory conduct designed to extort money from Clarium and its principals and/or employees. Choudhury's false and defamatory public statements regarding Plaintiffs have seriously injured Clarium and have inflicted considerable reputational damage on Plaintiffs, causing the loss of millions of dollars in revenue.

2.   Amisil originally invested in Clarium in 1998 in connection with its investment in a hedge fund, Thiel Capital International LLC (the "Fund"), managed by Clarium (then known as Thiel Capital Management, LLC).[1]  Clarium agreed to the investment on the basis of representations made by Choudhury about Amisil's qualifications to invest in Clarium's Fund, including representations regarding the amount of assets Amisil had at the time of investment, the competence and sophistication of Amisil, and Choudhury's role with Amisil. These representations were false, and Defendant knew them to be false when made.

3.   Amisil redeemed its investment in the Fund after less than a year, and, pursuant to the terms of its agreement with Clarium, its potential interest in Clarium simultaneously ceased vesting. As a result, Amisil's unvested interest in Clarium was extinguished, leaving Amisil with only a small fraction of its original potential interest in Clarium, which interest was subsequently extinguished. Since its divestment from the Fund in 1999, Amisil contributed nothing to the business of Clarium and until 2006, had virtually no communications with Clarium or its employees.

4.   In 2006, facing severe financial pressure, including fallout from the collapse

---

[1] All references in this pleading to Clarium incorporate by reference Thiel Capital Management.   All references to the Fund incorporate by reference both Thiel Capital International, LLC, and its successor, Clarium Capital LP.

Heller
Ehrman LLP

1   of a severely under-funded software start-up he founded and demands from a former friend
2   to repay a $1 million promissory note, Choudhury decided to try to convert Amisil's former
3   relationship with Clarium into a windfall payout.  As part of that plan, he initiated a public
4   smear campaign against Plaintiffs based on deliberate distortion of the facts surrounding
5   Amisil's investment in Clarium, with the intent of coercing a nuisance settlement from
6   Plaintiffs.

7          5.  Choudhury's smear campaign was merely one episode in a broader pattern of
8   financial chicanery and dissimulation by Defendant.  Choudhury's other wrongful conduct
9   led to the implosion of Defendant's own hedge fund due to fraud, a resulting lawsuit by
10  bilked investors and eventual judgment against Choudhury, and a separate recent jury
11  verdict and judgment for fraud and punitive damages in favor of the former friend holding
12  Choudhury's $1 million note, the principal of which was fraudulently employed by
13  Choudhury for his own purposes in contravention of the creditor's instructions and never
14  repaid.   Choudhury's practice of abusive, baseless litigation and mendacity is further
15  demonstrated by (yet another)  judgment against him in a fee dispute with his lawyers,
16  which judgment also penalized Choudhury for abuse of the appeals process.

17         6.  Based on Choudhury's wrongful conduct aimed at Plaintiffs,  this Complaint
18  asserts causes of action for tortious interference with business advantage, defamation, fraud,
19  and negligent misrepresentation.  Defendant's wrongs have interfered with the business and
20  damaged the reputation of Clarium and Mr. Thiel, causing substantial damages.

21  **II.    PARTIES**

22
23         7.  Plaintiff Clarium Capital Management LLC is a limited liability company
24  organized and existing under the laws of the state of Delaware with its principal place of
25  business in San Francisco, California.

26         8.  Plaintiff Peter Thiel was at all relevant times the majority member and
27  Managing Member of Clarium and is an individual who resides in San Francisco,
28  California.

Heller
Ehrman LLP

2

1    9.  Defendant Choudhury is an individual residing in San Francisco, California.

2  **III.    FACTUAL ALLEGATIONS**

3    **A.    Amisil's Investment and Redemption of That Interest**

4    10. In 1996, Clarium was formed as an investment adviser to oversee the

5  investments of the Fund.  In connection with investments in the Fund, Clarium offered

6  initial Fund investors the chance also to obtain a vesting equity interest in Clarium, the

7  management company for the Fund.  Pursuant to the document governing the administration

8  of Clarium (the Operating Agreement) that interest in Clarium would vest over the course of

9  four years.  The purpose of the vesting provisions was to lengthen the tenure of investments

10  in the Fund by rewarding committed investors with a share in the economics of Clarium, the

11  management company.

12    11. Pursuant to a Subscription Agreement executed by Defendant on Amisil's

13  behalf, Amisil invested $300,000 on or about March 1, 1998:  $297,000 of that initial

14  investment was an investment in the Fund, and $3,000 was an investment in Clarium.  The

15  $3,000 investment in Clarium afforded Amisil a chance to obtain a maximum of 1% interest

16  in Clarium, subject to the four-year vesting schedule set forth in the Operating Agreement.

17    12. Amisil fully and voluntarily redeemed its interest in the Fund on or about

18  February 1, 1999 — *before* the first anniversary of its investment.  According to the

19  Operating Agreement, Amisil's financial participation in the Management Company after

20  withdrawing its investment in the Fund was reduced to 10% of its original allotment of 1%

21  — *i.e.,* 0.1% — and its unvested interest in Clarium was extinguished.

22    **B.    Post-Redemption Conduct by Defendant**

23    13. In May 2002, Clarium communicated with Choudhury regarding the

24  repurchase of Amisil's 0.1% stake in Clarium, and Choudhury, on behalf of Amisil, agreed

25  to accept the buy-out.  Clarium accordingly tendered payment, which Amisil received.

26    14. Amisil, however, did not acknowledge the tender of the check or its prior

27  agreement.  Clarium then sent a letter to Amisil (via Defendant) in January 2004 (the

28  "January 2004 Letter"), asking Amisil to either confirm the termination of its relationship

Heller
Ehrman LLP

3

1 with Clarium per the prior agreement or, assuming that Amisil insisted upon reneging on its

2 prior agreement, Clarium indicated that contribution of Amisil's share of accumulated

3 expenses would be required.  Neither Defendant nor anybody else on behalf of Amisil

4 responded to the January 2004 Letter

5   15. Later, in 2006 — with Defendant already crippled by one judgment for fraud

6 and coming under increasing pressure to repay a fraudulently obtained $1 million

7 promissory note — Defendant approached Plaintiffs to demand a buyout of Amisil's

8 supposed interest in Clarium.  Notwithstanding its belief that Amisil's claim of such an

9 interest had been resolved by prior agreement, Plaintiffs, in the interest of compromise,

10 negotiated in good faith to resolve Amisil's sudden and contradictory assertion of an

11 ownership interest in Clarium.

12   16. On August 28, 2006, in a sudden break from those negotiations, Amisil

13 announced a suit against Clarium, Thiel and others, misleadingly claiming, among other

14 allegations, that Clarium had not paid it for the value of its membership interest.

15 **C. Defendant's Wrongful Conduct**

16   17. On the same day that it filed its suit, Amisil and Choudhury issued a press

17 release (the "August 28 Press Release") containing defamatory and otherwise injurious

18 statements from Choudhury regarding the purported conduct of Clarium and its officers.

19 Choudhury made these statements for the purpose of damaging the business and tarnishing

20 the reputation of Clarium, Thiel, and Clarium's employees.  The release (a copy of which is

21 attached as Exhibit A hereto) contained numerous misstatements designed to mislead the

22 public into believing that Clarium and Mr. Thiel had perpetrated a wrong against Amisil

23 and misrepresented important facts regarding Choudhury and Amisil.

24   18. In the August 28 Press Release, Choudhury stated:  "Peter Thiel has been

25 playing an elaborate shell game with our investment for the last eight years. Amisil has not

26 received a single distribution from Clarium, while he has skimmed tens of millions of

27 dollars out of Clarium into his own pockets. There's been no pay for us, and he's been no

28 pal."  These statements are false; Mr. Thiel has done nothing of the sort.  Rather, Mr.

Heller
Ehrman LLP

AMENDED COMPLAINT FOR DAMAGES; CASE NO. CGC 08-479177

1   Thiel's work has only benefited Clarium, which under his guidance has prospered.  Nor has

2   Mr. Thiel skimmed tens of millions of dollars (or any amount at all) from Clarium.  To the

3   contrary, Mr. Thiel has contributed millions of his own dollars towards the working capital

4   of Clarium — while Amisil and Choudhury contributed nothing.

5           19. The August 28 Press Release also misleadingly asserted that Amisil retained

6   "a full membership interest" in Clarium.  This statement, as Defendant knew, contravened

7   the clear terms of the governing documents of Clarium (which Amisil and Defendant had in

8   their possession) and the terms of Amisil's investment in Clarium in light of Amisil's total

9   redemption from the Fund in 1999.  Indeed, during the course of negotiations, Plaintiffs had

10  repeatedly and in detail explained to Defendant why Amisil could not — even under

11  Amisil's and Defendant's own version of the facts — have anything approaching a "full

12  membership interest" in Clarium.  Nevertheless, nowhere in the August 28 Press Release

13  did Defendant reveal the existence of the vesting schedule that drastically reduced its

14  purportedly "full" interest in Clarium.  The August 28 Press Release also, with no basis

15  whatsoever, stated that Amisil's damages were estimated "to be as much as $18 million," a

16  valuation of damages that even under Amisil's and Defendant's own theory of the case was

17  grossly overstated; indeed, in open court and under oath Choudhury — who approved the

18  release — subsequently testified that he had "no idea" whether the claim was worth $5

19  million, much less $18 million, and in fact revealed he had no real basis for calculating the

20  damages he asserted in the August 28 Press Release.

21          20. The August 28 Press Release also misleadingly failed to mention that Clarium

22  had attempted to resolve the matter in accordance with the terms of the Operating

23  Agreement and that the appraisal process had only failed because Amisil had not negotiated

24  in good faith, had insisted upon totally unreasonable terms, and had breached its promise to

25  be bound by the terms of the Operating Agreement by abandoning the appraisal (or

26  mediation and arbitration) in favor of filing a lawsuit in federal court.   The August 28

27  Press Release also misleadingly stated that Amisil had "never received any annual or

28  quarterly financial documents relating to this company [Clarium] or its interests," despite

1   the fact that just weeks before the press release was issued and as part of its efforts to

2   compromise, Plaintiffs had released pertinent financial data to Amisil and Defendant.

3          21. What is more, the August 28 Press Release misleadingly claimed that Amisil

4   did not receive "a single distribution" from the Management Company, omitting to disclose

5   that nothing in the Operating Agreement entitled any investor to any distributions.

6          22. The false and defamatory statements contained in the August 28 Press Release

7   were materially misleading and intended to damage Plaintiffs' business relationships and

8   reputations.  Choudhury has continued to defame Clarium and Mr. Thiel to potential and

9   current investors and to the public at large, encouraging investors not to invest with Clarium

10  or to withdraw investments, by making false and misleading statements about Clarium.

11  Choudhury also made similar false and misleading statements to certain of Clarium's

12  counterparties in an attempt to damage the firm's relationship with its brokers, creditors,

13  and other members of the financial community.

14         23. Choudhury's conduct has caused significant harm to Clarium and to Mr.

15  Thiel.  Clarium has lost the opportunity to earn fees on the management of hundreds of

16  millions of dollars as a proximate result of Choudhury's activities and has been forced to

17  expend substantial effort and expense combating the effects of Choudhury's injurious

18  falsehoods.  As Clarium's general partner, Mr. Thiel has suffered proximately from these

19  same injuries.  Mr. Thiel, a prominent venture capitalist, has also experienced reputational

20  harm due to Choudhury's intentional misstatements regarding Mr. Thiel's conduct.

21         24. Plaintiffs have only learned of the falsity of many of Defendant's statements

22  during a federal trial in which Choudhury testified in August 2008 and/or during discovery

23  that took place during the Summer of 2008 in related arbitration proceedings.  Until

24  compelled by judicial and arbitration processes to admit the truth in 2008, Choudhury has

25  routinely concealed or misrepresented the facts to Plaintiffs, who could not have known the

26  extent of the dissmulations perpetrated by Choudhury that are at the core of this matter.  To

27  the extent any statute of limitations began to run on any statement made by Choudhury,

28  such limitations period was stayed and tolled from the filing of Amisil's lawsuit against

1  Plaintiffs and as a result of the order of the court staying that action pending arbitration,

2  until, at a minimum, the time for filing counterclaims in that proceeding.

3  ### First Claim for Relief

4  **(Tortious Interference with Prospective Business Advantage)**

5  **(On Behalf of Clarium)**

6  25. Plaintiffs re-allege paragraphs 1-24 of this Complaint as if fully set forth

7  herein.

8  26. Clarium has business relationships with hundreds of existing investors in the

9  funds it manages and continues to have communications with prospective qualified

10  investors on a regular basis; it also has critical relationships with counterparties necessary to

11  the conduct of its business. Defendant Choudhury has been, at all relevant times, aware of

12  these facts.

13  27. Defendant intended to disrupt Clarium's relationships with its existing and

14  prospective investors, as well as Clarium's counterparties by making false accusations about

15  Plaintiffs to the public.

16  28. As a result, Clarium's relationships with its existing and prospective investors

17  have been adversely affected. Defendant' misstatements and misconduct have been a

18  contributing factor in the redemption of funds by current investors and the delay,

19  cancellation, and/or reduction of new investments by prospective investors.

20  29. As a result, Plaintiffs have suffered damages in an amount to be proven.

21  ### Second Claim for Relief

22  **(Defamation)**

23  30. Plaintiffs re-allege paragraphs 1-29 of this Complaint as if fully set forth

24  herein.

25  31. In August 2006, Amisil issued a press release containing derogatory and

26  defamatory statements about Plaintiffs by Defendant Choudhury. Defendant also made

27  derogatory and defamatory statements regarding the ethics and conduct of Plaintiffs at

28  industry events and elsewhere.

Heller
Ehrman LLP

7

32. The statements made by Defendant referred to in the preceding paragraph were false.

33. The statements were of and concerning Clarium and Mr. Thiel, and were defamatory to each.

34. Indeed, because the published statements made allegations injurious to the business and profession of Plaintiffs, they are defamatory per se.

35. The statements were published to third parties. Third parties who heard these statements understood that they were intended to be defamatory. As a result of the publication of these false comments, Plaintiffs have suffered reputational and actual damages to be determined.

### Third Claim for Relief

### (Fraud)

### (On Behalf of Clarium)

36. Plaintiffs re-allege paragraphs 1-35 of this Complaint as if fully set forth herein.

37. Since the inception of Amisil's relationship with Clarium, Defendant has made numerous false and misleading statements and omissions regarding Amisil. Clarium relied on such statements and omissions to its considerable detriment.

38. In particular, Defendant knowingly represented that Amisil and its agents were sophisticated parties capable of making an informed decision regarding investment in the Fund and the risks, rewards, rights, and obligations attendant to hedge fund investing. Among the specific representations Defendant made in signing the Subscription Agreement was the representation that Amisil had "such knowledge and experience in financial and business matters that the undersigned is capable of evaluating the merits and risks" of its investment with the Fund and Clarium. Also, during the course of pre-investment meetings with Mr. Thiel, Choudhury represented that he was a highly competent investor, not least because he ran his own hedge fund. Amisil also represented that it held over $5 million in assets. Finally, Choudhury represented that he was Amisil's "Senior Vice President" when

1 in fact he did not hold that or any other title with Amisil, which Choudhury finally admitted

2 in 2008. Plaintiffs only learned of the falsity of Choudhury's representations during the

3 August 2008 trial at which Choudhury testified and/or during discovery in the arbitration

4 proceeding between Amisil and Plaintiffs.

5       39. In making those and other representations in the Subscription Agreement,

6 Defendant intended to induce Clarium to accept Amisil's investment, as investor

7 sophistication was a prerequisite for making an investment in the Fund and the Management

8 Company.

9       40. Defendant's statements set forth above were false and misleading.

10 Defendant's inability to parse unambiguous provisions of the Operating Agreement (such as

11 those pertaining to distributions and vesting) or to understand the difference between the

12 Fund (into which 99% of Amisil's investment was directed) and Clarium itself (into which

13 only 1% of its initial investment went) demonstrate that neither Choudhury nor Amisil are

14 the sort of investors they represented themselves to be. The misleading nature of the

15 representations by Choudhury, purportedly acting on behalf of Amisil, is underscored by the

16 failure of Choudhury's purported hedge fund, a subsequent civil suit brought by a bilked

17 investors for fraud relating to that hedge fund, and the resulting judgment against

18 Choudhury. The recent jury verdict and judgment against Choudhury for his fraudulent

19 solicitation of nearly $1 million from a former friend further confirm the misleading nature

20 of these representations, as do the recently discovered facts that Choudhury fabricated

21 achievements on his resume (including those relating to the financial success of his

22 enterprises) and his title at Amisil, both for the purpose of inducing others to believe in his

23 authority, status, and sophistication. Neither Clarium nor its employees could have known

24 of Defendant's lack of sophistication or history of deception until the Spring 2006 at the

25 earliest, in light of Defendant's duplicitous representations to the contrary.

26       41. Based on Defendant's misrepresentations, Clarium held a good-faith belief

27 that Choudhury and Amisil were sophisticated investors holding at least $5 million who

28 could evaluate, and had accepted, the risks and rewards of hedge fund investing. Clarium

1  relied on these representations to its detriment.  But for these representations, Amisil would

2  not have been allowed to commit capital to either the Fund or the Management Company

3  and, had Clarium discovered the truth earlier, it would have taken action to immediately

4  terminate its relationship with Amisil.

5      42. Clarium suffered damages to be proven as a result of Defendant's fraud.

**Fourth Claim for Relief**

**(Negligent Misrepresentation)**

**(On Behalf of Clarium)**

9      43. Plaintiffs re-allege paragraphs 1-42 of this Complaint as if fully set forth

10  herein.

11      44.  Defendant owed a duty to accurately disclose that neither he nor Amisil were

12  the skilled, honest, sophisticated investors he made them out to be.

13      45. Defendant acted negligently in making said representations, as he had no

14  reasonable grounds for believing its representations were true.

15      46. Clarium relied on this misinformation to its detriment and allowed Amisil to

16  invest in the fund and become a member of the Management Company.

17      47. As a result of Defendant's negligent representations and omissions, Clarium

18  has been damaged in an amount to be proven at trial.

**Fourth Claim for Relief**

**(California Business & Professions Code § 17200)**

21      48. Plaintiffs re-allege paragraphs 1-47 of this Complaint as if fully set forth

22  herein.

23      49. The business practices and conduct of Defendant described above (the "Unfair

24  Business Practices") violate section 17200 of California's Business & Professions Code.

25      50. Defendant's Unfair Business Practices are unfair because they offend an

26  established public policy and are immoral, unethical, oppressive, unscrupulous and

27  substantially injurious to Plaintiffs.  Further, there is no utility derived from Defendant's

28  Unfair Business Practices, while the gravity of the harm to Plaintiffs is enormous.

Heller
Ehrman LLP

10

51. Defendant's Unfair Business Practices are unlawful because, *inter alia*, they constitute fraud and negligent misrepresentation.

52. Defendant's Unfair Business Practices are fraudulent because they are likely to deceive members of the public and, in fact, fact did deceive Plaintiffs.

53. As a result of Defendant's unfair, unlawful and fraudulent business practices, Plaintiffs have suffered injury and have lost money and property.

54. Plaintiffs are entitled to restitution and injunctive relief as may be necessary to restore to them the money and property which was wrongfully acquired by Defendant's Unfair Business Practices and/or in which Plaintiffs have a vested interest. Additionally, Plaintiffs should be awarded restitutionary disgorgement of any and all profits Defendant may have gained through interest or earning on the money and property Defendant wrongfully acquired.

## **Prayer for Relief**

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. For general and consequential damages according to proof;

2. For restitution and disgorgement;

3. For punitive and exemplary damages according to proof;

4. For injunctive relief prohibiting further defamatory public statements by Choudhury;

5. For prejudgment interest in an amount according to proof;

6. For attorneys' fees and costs of suit incurred herein; and

7. For such other relief as deemed just and proper.

//
//
//
//
//
//
//

Heller
Ehrman LLP

11

August 28, 2008

HELLER EHRMAN LLP

By _____

Attorneys for Plaintiffs
CLARIUM CAPITAL MANAGEMENT LLC and
PETER THIEL

**EXHIBIT A**

 

## Amisil Alleges Fraud by PayPal Founder and His Fund Management Company

SAN FRANCISCO, Aug. 28 /PRNewswire/ -- A longtime investor in Clarium Capital Management today filed suit in U.S. District Court for the Northern District of California, alleging that the San Francisco-based hedge fund management company headed by PayPal founder Peter A. Thiel has been defrauding it for nearly a decade.

The plaintiff Amisil Holdings, Ltd., a risk capital investor, named Clarium and Thiel, as well as Jason Portnoy and Mark Woolway -- two other Clarium officers -- as defendants in the action.

Amisil is seeking recovery of the value of its investment in Clarium, estimated to be as much as $18 million. The filing notes that although Clarium received large sums from the 2002 PayPal IPO and the subsequent sale of PayPal to eBay, Amisil received no return on its Clarium investment from these transactions.

According to Amit Choudhury, Amisil's Senior Vice President, "Peter Thiel has been playing an elaborate shell game with our investment for the last eight years. Amisil has not received a single distribution from Clarium, while he has skimmed tens of millions of dollars out of Clarium into his own pockets. There's been no pay for us, and he's been no pal."

In February 1998, Amisil became a minority member of Thiel Capital International, the investment fund, and Clarium, the registered investment fund manager, securing a membership interest in each. In March 1999, Amisil withdrew its membership in the investment fund, but retained a full membership interest in Clarium.

The suit alleges that Thiel has dominated and continues to dominate Clarium and its $2 billion investment portfolio in his role as majority and managing member, to the detriment of Amisil's interests. Portnoy is Clarium's Chief Financial Officer and Woolway, its Managing Director.

In December 1998, Thiel Capital International Fund became the sole seed investor in a company initially known as Field Link, which was ultimately renamed PayPal, Inc., the world's leading provider of secure payment services for online business transactions. In January 1999, Thiel became CEO of PayPal. Through reinvestment of its holdings (including Amisil's portion) in PayPal, Clarium owned at least 15% of Thiel Capital International Fund and PayPal by the end of 1999.

The suit asserts that when PayPal went public on Valentine's Day 2002, Clarium's stake in the company was more than $4.9 million. In May 2002, Thiel and Clarium offered Amisil $372 for this membership interest.

After completing a $131.1 million secondary public offering of nearly 7 million shares in early July 2002, Thiel and Clarium sold PayPal to eBay, Inc. for $1.5 billion.

In 2006, Amisil officials learned that Clarium paid out over $60 million at the end of 2005 to Thiel, the only other member of Clarium, and other employees. According to Choudhury, none of the proceeds of the IPO or eBay sale transactions was distributed to Amisil. In fact, Amisil was kept in the dark about these payments. "Since the beginning of its membership interest in Clarium, Amisil has never received any annual or quarterly financial documents relating to this company or its interests," he said.

Although Amisil officials have requested an accounting of Clarium's transactions and made multiple requests to inspect Clarium's books and records, the suit notes that these documents have not been produced and the requests have not been honored.

The complaint alleges violation of the 1934 Securities and Exchange Act and the 1940 Investment Advisers Act, as well as fraud, conversion, breach of fiduciary duty, conspiracy, breach of contract, breach of implied

 

covenant of good faith and fair dealing, unfair business practices and violation of accounting and constructive trusts.

Amisil is asking for general, punitive and exemplary damages in the matter, as well as for preliminary and permanent injunctions to prevent Clarium from involuntarily removing it as a member. A jury trial is requested.

SOURCE Amisil Holdings, Ltd.

Issuers of news releases and not PR Newswire are solely responsible for the accuracy of the content.
Terms and conditions, including restrictions on redistribution, apply.
Copyright © 1996-2006 PR Newswire Association LLC. All Rights Reserved.
A United Business Media company.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Howard S. Caro (SBN 202082)<br>Nathaniel R. Spencer-Mork (SBN 226886)<br>Heller Ehrman LLP<br>333 Bush Street, San Francisco, CA 94104-2878<br>TELEPHONE NO.: (415) 772-6000    FAX NO.: (415) 772-6268<br>ATTORNEY FOR *(Name):* Clarium Capital Management LLC and Peter Thiel | AUG 2 7 2008 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **San Francisco**
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME: Clarium Capital Management LLC and Peter Thiel v. Amit Choudhury

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☒ Unlimited<br>(Amount demanded exceeds $25,000) | ☐ Limited<br>(Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **CGC 08-479177**<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☒ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties     d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel     e. ☐ Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve          in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence     f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief     c. ☒ punitive
4. Number of causes of action *(specify):* 5  Tortious Interference; Defamation; Fraud; Negligent Misrep.; Unfair Bus. Practices
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 27, 2008

Howard S. Caro
_____
(TYPE OR PRINT NAME)                              ► _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CASE NUMBER: CGC-08-479177  CLARIUM CAPITAL MANAGEMENT LLC VS. AMIT CHOUDI

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

| | |
|---|---|
| **DATE:** | **JAN-30-2009** |
| **TIME:** | **9:00AM** |
| **PLACE:** | **Department 212** |
| | **400 McAllister Street** |
| | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.** (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges



**MEDIATION SERV**

MEDIATION SERVICES

**THE BAR ASSOCIATION OF SAN FRANCISCO**

**PROCEDURES, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:**

# www.sfbar.org/mediation

QUESTIONS?

adr@sfbar.org or 415-982-1600

EXPERIENCED MEDIATORS ARE
AVAILABLE IN THE FOLLOWING AREAS

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Fee Disputes
Financial
Gay/Lesbian/Bisexual/Transgender Issues
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
Malpractice:
Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
Women's Issues
And more...

## What is BASF's Mediation Service?

Mediation is a voluntary, private dispute resolution process in which a trained mediator assists the parties in reaching an outcome that is mutually agreeable.

Mediation Services was established by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. This traditional mediation service is an approved alternative to court ordered Arbitration or Early Settlement.

## How Does it Work?

BASF's Mediation Services works quickly, matching a qualified mediator to a case within days. The assignment process is flexible; experienced BASF staff can suggest a mediator, or you can request three biographies to choose from, or request a particular mediator from our Web site.

## How Much Does the Service Cost?

Mediators generously provide one-hour of preparation and two hours of session time free of charge as a service to BASF and the community. To qualify for the pro-bono hours, parties must file the Consent to Mediate form with BASF. Hourly fees beyond those three hours vary depending on the mediator selected. BASF charges a small administrative fee, which pays for the costs of running the program.

## Who Can Use the Service?

The service can be utilized by anyone whether or not the dispute has been filed in a court. If a legal action is already underway, it can be used at any time during the litigation process and is not limited to San Francisco County litigants.

## Who Are the Mediators?

Experienced mediation professionals are available to assist in most areas of dispute, ranging from multi-party commercial matters to individuals in conflict. Each has been pre-approved pursuant to strict educational and experience requirements. In fact, our mediators average 15 years mediation experience and 125 hours of formal mediation training.

## More Information

Our Web site - www.sfbar.org/mediation - provides photographs, short biographies hourly rates of our mediators. You can search by name or by area of law.

If you don't see the area you need in our 30+ panels, just contact us at adr@sfbar.org; it is very likely we can match your need with one of our panelists.

# WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600

# Alternative Dispute Resolution (ADR)
# Program Information Package

# Alternatives to Trial

# There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint.  (CRC 3.221(c))



**Superior Court of California
County of San Francisco**

# Introduction

**Did you know that most civil lawsuits settle without a trial?**

**And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?**

**These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.**

**In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.**

**ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.**

## Advantages of ADR

**ADR can have a number of advantages over a lawsuit.**

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

    1)    Judicial Arbitration
    2)    Mediation
    3)    The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case.  Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions.  Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes.  An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts.   Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties.  A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed.  If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation.  The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial.  Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110).  Both forms are attached to this packet.

### Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $800 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar.  The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute.  The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference.  A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case.  The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court.  Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA  94102-4514

| | |
|---|---|
| Plaintiff<br><br>v.<br><br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** |

**The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:**

☐  **Private Mediation**          ☐     **Mediation Services of BASF**      ☐      **Judicial Mediation**
☐  **Binding arbitration**                                                                        Judge _____
☐  **Non-binding judicial arbitration**                                             Judge _____
☐  **BASF Early Settlement Program**
☐  **Other ADR process (describe)** _____

**Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

_____

| | | |
|---|---|---|
| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| ☐  Plaintiff    ☐  Defendant    ☐  Cross-defendant | | Dated: _____ |

| | | |
|---|---|---|
| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| ☐  Plaintiff    ☐  Defendant    ☐  Cross-defendant | | Dated: _____ |

| | | |
|---|---|---|
| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| ☐  Plaintiff    ☐  Defendant    ☐  Cross-defendant | | Dated: _____ |

☐  *Additional signature(s) attached*

ADR-2  3/06                              STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

 

CM-110

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br><br><br><br>TELEPHONE NO.:            FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* | *FOR COURT USE ONLY* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| | |
|---|---|
| **CASE MANAGEMENT STATEMENT**<br><br>**(Check one):**  ☐ **UNLIMITED CASE**         ☐ **LIMITED CASE**<br>                    (Amount demanded          (Amount demanded is $25,000<br>                    exceeds $25,000)          or less) | **CASE NUMBER:** |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:              Dept.:           Div.:            Room:

Address of court *(if different from the address above):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
       (1) ☐ have not been served *(specify names and explain why not):*

       (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*

       (3) ☐ have had a default entered against them *(specify names):*

   c. ☐ The following additional parties may be added *(specify names; nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint  ☐ cross-complaint     *(describe, including causes of action):*

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2007] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courtinfo.ca.gov |
| | | American LegalNet, Inc.<br>www.FormsWorkflow.com |

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.  The party or parties are willing to participate in (check all that apply):

(1) ☐ Mediation

(2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

(3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

(4) ☐ Binding judicial arbitration

(5) ☐ Binding private arbitration

(6) ☐ Neutral case evaluation

(7) ☐ Other (specify):

e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court (specify exemption):

**11. Settlement conference**

☐ The party or parties are willing to participate in an early settlement conference (specify when):

**12. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement (name):

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case (explain):

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy ☐ Other (specify):

Status:

**14. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 14a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by (name party):

**15. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action (specify moving party, type of motion, and reasons):

**16. Other motions**

☐ The party or parties expect to file the following motions before trial (specify moving party, type of motion, and issues):

CM-110 [Rev. January 1, 2007]                    **CASE MANAGEMENT STATEMENT**                    Page 3 of 4



# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

## Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason
The Honorable James J. McBride

The Honorable Kevin M. McCarthy
The Honorable Marla J. Miller
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated but specific request are not guaranteed. Please allow at least 30 days for scheduling. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

04/08 (ja)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

    I am a citizen of the United States and employed in San Francisco County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is One Embarcadero Center, 30th Floor, San Francisco, California  94111.  On November 12, 2008, I personally served:

NOTICE OF FILING OF NOTICE OF REMOVAL TO FEDERAL COURT

by delivering copies thereof to:

    Howard S. Caro, Esq.
    Hogan & Hartson
    4 Embarcadero Center, 22nd Floor
    San Francisco CA 94111

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on November 12, 2008, at San Francisco, California.

_____
                      Karen Falvo

90039818.1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PROOF OF SERVICE

1

## PROOF OF SERVICE

2      I am a citizen of the United States and employed in San Francisco County, California. I

3  am over the age of eighteen years and not a party to the within-entitled action. My business
address is One Embarcadero Center, 30th Floor, San Francisco, California 94111. On November

4  12, 2008, I deposited with Federal Express, a true and correct copy of the within documents:

5      NOTICE OF FILING OF NOTICE OF REMOVAL TO FEDERAL COURT

6  in a sealed envelope, postage fully paid, addressed as follows:

7      Robert B. Hawk, Esq.
Hogan & Hartson

8      525 University Ave., 2nd Floor
Palo Alto CA 94301

9
      Following ordinary business practices, the envelope was sealed and placed for collection

10  by Federal Express on this date, and would, in the ordinary course of business, be retrieved by
Federal Express for overnight delivery on this date.

11
      I declare under penalty of perjury under the laws of the State of California that the above

12  is true and correct.

13      Executed on November 12, 2008, at San Francisco, California.

14

15

16                                             Karen Falvo

17

18  90039822.1

19

20

21

22

23

24

25

26

27

28


**manatt**

manatt | phelps | phillips

**Barry W. Lee**
Manatt, Phelps & Phillips, LLP
Direct Dial: (415) 291-7450
E-mail: BWLee@manatt.com

November 17, 2008

Client-Matter: 88573-030

**BY E-MAIL**

Martin T. Goldblum, Esq.
Troy Gould
1801 Century Park East
Suite 1600
Los Angeles, CA 90067

      **Re:** ***Tooley Trust, et al. v. EOP Operating Limited Partnership, et al.***
              **AAA Case No. 72115Y0085207WYGI**

Dear Mr. Goldblum:

    We write on behalf of the Tooley Parties in response and in opposition to Respondents'
letter dated November 17, 2008 in which they request an order enjoining the Tooley Parties from
calling expert witnesses George C. Howell, III, Esq. and David C. Ling, Ph.D. for rebuttal
purposes at the Hearing without any prior attempt to meet and confer with us on this issue.

    <u>First</u>, we disagree with Respondents' argument that the disclosure of two rebuttal
witnesses is untimely, and in breach of procedures governing this arbitration and of the parties'
agreement to adjourn the hearing previously scheduled for September.  Contrary to Respondents'
representations, the AAA rules do not prevent the Tooley Parties from offering expert rebuttal
witnesses.  Respondents argue that Rule 21(a)(ii) of the AAA Commercial Rules for Arbitration
and Rule L-3 of the AAA Procedures for Large, Complex Disputes prohibit the Tooley Parties
from introducing Mr. Howell and Dr. Ling at the Hearing.  But the AAA rules cited by
Respondents only address (a) an arbitrator's discretion to control the exchange of information
between the parties, and (b) the matters to be considered at a preliminary hearing.  These AAA
rules contain no language preventing the Tooley Parties from calling rebuttal witnesses at the
hearing.  Moreover, Mr. Goldblum never restricted the right of any party to call rebuttal
witnesses.  Indeed, as recently as August 22, Respondents recognized that fact.  In Respondents'
August 22, 2008 disclosure of witnesses, Respondents expressly reserved "the right to call any
witness for impeachment or <u>rebuttal purposes, whether designated on any list or not</u>."  *See*
<u>Exhibit B</u> to Respondents' Letter of November 17, 2008 (emphasis added).  Respondents should
not be permitted to obtain an order enjoining the Tooley Parties from doing the very thing
Respondents reserved the right to do.

One Embarcadero Center, 30th Floor, San Francisco, California 94111  Telephone: 415.291.7400 Fax: 415.291.7474

Albany | Los Angeles | New York | Orange County | Palo Alto | Sacramento | San Francisco | Washington, D.C.

**manatt**

manatt | phelps | phillips

Martin T. Goldblum, Esq.
November 17, 2008
Page 2

    Second, we disagree with Respondents' mischaracterization that Mr. Howell and Dr. Ling are being proffered on the same subject areas as the Tooley Parties' existing experts[1] and are an attempt to "redo" our experts.

    As previously disclosed to Respondents, we anticipate that Mr. Howell will offer expert opinions in rebuttal to those offered by Respondents' experts related to the tax consequences of electing Class H Units in connection with the EOP/Blackhawk merger, the application of the tax protection agreements, and the methodology of the tax indemnification calculations. *See* Exhibit A to Respondents' November 17, 2008 Letter at page 1, para. 1. For example, Mr. Howell is expected to rebut the opinions of Respondents' experts that exchanging the Class A Units for Class H Units would not be a taxable transaction and therefore Respondents' satisfied their contractual obligation to afford tax protection to Claimants. Any such testimony by Mr. Howell is not duplicative of the anticipated testimony of the Tooley Parties' previously disclosed and deposed expert, Gregg Bloomberg.

    In regards to Dr. Ling, we anticipate that he will offer expert opinions in rebuttal to those offered by Respondents' experts related to the valuation of the Class H units and a comparison of the Class H units with other units offered in connection with mergers, consolidations, and combinations (e.g., Carr America, Trizec, Arden). *See id.* For example, Dr. Ling will opine on the value of the Class H units as an appropriate forward-looking real estate investment taking into account all risks and benefits. He will compare the attributes of the Class H units against the Class A units that they were to replace and against other units issued in connection with other REIT mergers, consolidations and combinations. Any such testimony by Dr. Ling is not duplicative of the anticipated testimony of the Tooley Parties' previously disclosed and deposed expert, Kevin Henry.

    Third, we disagree with Respondents' argument that calling Mr. Howell and Dr. Ling in rebuttal at the Hearing is unfairly prejudicial. This is not "trial by ambush," as Respondents claim. More than three weeks prior to the commencement of the Hearing, we disclosed the identities of these rebuttal expert witnesses and the subject matters on which we anticipate that they will offer expert opinions at the Hearing. *See* Exhibit A to Respondents' November 17, 2008 Letter at page 1, para. 1. We also offered to immediately produce both expert witnesses for deposition to afford Respondents with the opportunity to thoroughly examine them on their opinions anticipated to be offered at the Hearing. *See id.* Although we asked Respondents' counsel to advise as to whether and when they would like to depose these experts, Respondents

---

[1]    Respondents' statement that the Tooley Parties have six experts is misleading. In fact, the Tooley Parties have only previously retained two experts for the purpose of this arbitration proceeding: Gregg Bloomberg and Kevin Henry. The other four expert witnesses that Respondents refer to are percipient expert witnesses consisting of the Tooley Parties' Certified Public Accountants, who are responsible for preparing and filing each of their federal and state income tax returns.

**manatt**

manatt | phelps | phillips

Martin T. Goldblum, Esq.
November 17, 2008
Page 3

have not responded other than to seek an order enjoining the Tooley Parties from offering the testimony of these two experts at the Hearing.

In light of our prior offer to immediately produce these experts for deposition, we find untenable the argument of Respondents that their need to take further discovery will "inevitably lead to further delays." We know of no justifiable reason as to why there is not sufficient time to depose these experts prior to the commencement of the Hearing, and Respondents have not even attempted to make any such argument. Moreover, it is a red herring for Respondents to argue that their need to reserve the right to call additional rebuttal experts to respond to the Tooley Parties' rebuttal experts may also somehow lead to further delays. Respondents previously reserved all such rights in their witness disclosures (Exhibit B to Respondents' Letter of November 17, 2008), and there is no rationale as to why the expert witnesses of Respondents – for which Mr. Howell and Dr. Ling are expected to offer rebuttal testimony – would not be able to provide testimony in surrebuttal supporting their own opinions.

Finally, Respondents are profoundly mistaken that the Tooley Parties' disclosure of these two rebuttal expert witnesses is somehow "a backdoor attempt at a third adjournment of the Hearing." To be clear, the Tooley Parties do not seek any adjournment of the Hearing. The recent disclosure of Mr. Howell and Dr. Ling to not provide any support for such an adjournment because there is plenty of time to take their depositions prior to the commencement of the Hearing. To this much, we agree with Respondents: the Hearing should proceed as scheduled on December 8, 2008.

Respectfully submitted,

Barry W. Lee

cc:    Wyndie Gibson
       All Counsel of Record

90040287.1