Howard S. Caro (SBN 202082)
Benjamin T. Diggs (SBN 245904)
HOGAN & HARTSON LLP
4 Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
hscaro@hhlaw.com
btdiggs@hhlaw.com

Robert B. Hawk (SBN 118054)
J. Christopher Mitchell (SBN 215639)
HOGAN & HARTSON LLP
525 University Avenue, 2nd Floor
Palo Alto, CA 94301
Telephone: (650) 463-4000
Facsimile: (650) 463-4199
rbhawk@hhlaw.com.
jcmitchell@hhlaw.com

Attorneys for Plaintiffs
Clarium Capital Management LLC and Peter Thiel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CLARIUM CAPITAL MANAGEMENT LLC AND PETER THIEL<br><br>Plaintiffs,<br><br>v.<br><br>AMIT CHOUDHURY, and DOES 1-100,<br><br>Defendants. | CASE NO: 08-CV-5157-SBA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT AMIT CHOUDHURY'S MOTION TO STAY ACTION PENDING ARBITRATION**<br><br>Date: February 10, 2009<br>Time: 1:00 p.m.<br>Courtroom: 3<br>Judge: Hon. Saundra B. Armstrong |

## I. INTRODUCTION

In his Motion to Stay and separately filed Motion to Enlarge Time to Respond to the Amended Complaint, Amit Choudhury fails to apprise the Court of the most basic relevant facts, which wholly undercut his motions. Specifically, over a year ago, Clarium and Peter Thiel (the "Clarium Plaintiffs") attempted to bring Choudhury into the arbitration proceeding pending against Clarium, Mr. Thiel and two other parties (ICDR No. 50 181 T 00365 07) by asserting counterclaims against Choudhury in that proceeding. However, Choudhury objected to the arbitrators' jurisdiction and unambiguously *refused to participate* in the proceeding. Choudhury insisted that the arbitrators had no jurisdiction over him and that any claims against him (a non-signatory to the underlying agreement) could only be brought in court. But now that Clarium and Mr. Thiel have done precisely what Choudhury argued they must do – filed their claims against Choudhury in court – he has suddenly reversed course, and now insists that the claims can only be heard in arbitration.

Not surprisingly, both controlling law and common sense preclude Choudhury from simply changing his mind and forcing these claims into arbitration. Indeed, Choudhury's Motion to Stay this proceeding of favor of arbitration is nothing short of frivolous. Because he previously declined to participate in the arbitration, controlling Ninth Circuit law requires a finding that Choudhury has *waived* any right to arbitrate the claims asserted in this action. What is more, Choudhury has *no right* – in fact, no colorable argument – to compel arbitration of claims asserted by Mr. Thiel, who is not a party to the Operating Agreement and who is not subject to its arbitration at issue. Because Choudhury's request for arbitration is, on its face, wholly groundless, the Court should not grant the Motion to Stay and should also deny Choudhury's concurrently filed Motion for an Enlargement of Time within which to Respond to the Amended Complaint.[1]

---

[1] Choudhury's response to the Amended Complaint is already untimely. On November 19, the Clarium Plaintiffs granted Choudhury an extension of time within which to respond to the Amended Complaint, stipulating to a response date of December 5, 2008. By waiting until the day his response was due to file his Motion to Enlarge Time (although he clearly knew much earlier that he would be filing a Motion to Stay in favor of arbitration), Choudhury unilaterally granted himself an additional extension. Because Choudhury's response is already late, the Court should require Choudhury to respond to the Amended Complaint immediately.

1

## II. PROCEDURAL HISTORY

On August 28, 2006, Amisil Holdings Ltd. filed suit in this Court against Clarium Capital Management, Peter Thiel, Jason Portnoy, and Mark Woolway (the "Clarium Defendants" or "Respondents"). Pursuant to a clause in the Operating Agreement governing Amisil's investment in Clarium, the Clarium Defendants successfully moved the Court to compel arbitration. *See* 9/20/07 Order [Docket No. 83]. Amisil's subsequently-filed Demand in Arbitration named Clarium and the same three individuals as Respondents (ICDR No. 50 181 T 00365 07).

On November 5, 2007, Respondents filed a Counter-Demand in Arbitration against Amisil and Choudhury, who represented himself as a "Senior Vice President" of Amisil (although he subsequently admitted under oath that he invented that title). In response to Respondents' Counter-Demand, Choudhury filed an Objection to Jurisdiction and Motion to Dismiss Respondents' claims, making clear that he would not voluntarily participate in the arbitration proceeding. *See* Declaration of J. Christopher Mitchell in Opposition to Defendant Amit Choudhury's Motion to Stay Action Pending Arbitration ("Mitchell Decl.") Ex. A (Choudhury Objection to Jurisdiction and Motion to Dismiss). In the Memorandum supporting his objections, Choudhury stated:

> [T]here can be no serious question that Mr. Choudhury does not belong in this arbitration. He has *no relationship* with Respondents. There is *no agreement to arbitrate* between him and Respondents. He was never a party to the contract entered into between Amisil and Clarium. He is therefore not subject to the arbitration clause within that contract, and is not subject to the jurisdiction of any AAA arbitrators.

*Id.* at 3 (emphasis in original). Choudhury further stated that "[a] party cannot be compelled to arbitrate a dispute, and thereby lose its constitutional right to a jury trial, unless it has expressly agreed to do so," protesting that he "should not be forced to expend time and money … defending claims in arbitration when he never agreed to litigate disputes with Counterclaimants in this forum." *Id.* at 6, 8.

Choudhury also specifically insisted that only a court – and not the arbitrators – could determine arbitrability of claims asserted against him:

> Mr. Choudhury does not consent to AAA jurisdiction in any respect, whether on the merits or as to matters of jurisdiction or arbitrability …Mr. Choudhury reserves all rights to seek a determination of arbitrability in court, including the right to seek an injunction against Respondents' pursuit of their claims in this arbitration proceeding against him.

2

*Id.* at 2. Taking Choudhury at his word, Respondents thereafter dismissed their arbitration claims *without prejudice*. Left with no alternative venue to assert their claims, Clarium and Mr. Thiel subsequently filed claims against Choudhury in the Superior Court for the County of San Francisco, which Choudhury removed to this Court.

Ignoring this undisputed history, Choudhury now seeks to reverse his prior position, retract all of his earlier statements, and force the claims against him back into arbitration. Perhaps recognizing that this Court would not look favorably on his about-face, Choudhury has peremptorily filed a parallel "declaratory relief" action with the ICDR – the very entity Choudhury previously asserted lacked jurisdiction to determine arbitrability. In that ICDR action, Choudhury seeks an *arbitration panel* ruling that the same claims that he previously claimed were not subject to arbitration must now be arbitrated.[2] Notably, Choudhury offers no explanation for his sudden change of heart. As discussed below, Choudhury's filing with the Panel is undisguised forum-shopping and is beside the point, as the arbitrability determination of claims pending in this Court rests with this Court. Choudhury has no colorable argument to support his Motion to Stay; this Court should deny that Motion and require that Choudhury respond immediately to the Amended Complaint.

## III.  ARGUMENT

Under Section 3 of the Federal Arbitration Act, before an action can be stayed in favor of arbitration, a district court must first determine whether the claims asserted are properly referred to arbitration. *See* 9 U.S.C. § 3. In effect, the Court must act as a gate-keeper to prevent parties from forcing claims out of court and before an arbitration panel for which there is no basis for arbitration. The Federal Circuit recently set forth the relevant standard:

---

[2] On January 2, 2009, the Clarium Plaintiffs made a special appearance in Choudhury's later-filed arbitration proceeding (ICDR 50 181 T 00495 08, or the "Choudhury Proceeding") to contest the jurisdiction of the ICDR, including with respect to arbitrability. *See* Mitchell Decl. Ex. B. The ICDR has not ruled on the Clarium Plaintiffs' submission. But the ICDR has denied Choudhury's request to have the Choudhury Proceeding assigned to the same Panel presiding over the dispute between Amisil and Clarium. In fact, the ICDR circulated a list of potential arbitrators for the Choudhury Proceeding, which does not include any of the members of the Amisil v. Clarium Panel. *See id.*, Ex. C.

3

> A district court's inquiry in order to be 'satisfied' pursuant to Section 3 of the FAA begins with the question of who has the power to determine the arbitrability of a dispute between the parties. If the court concludes that the parties clearly and unmistakably intended to delegate the power to an arbitrator, then the court should also inquire as to whether the party's assertion of arbitrability is "wholly groundless." If, however, the court concludes that the parties did not clearly and unmistakably intend to delegate arbitrability decisions to an arbitrator, the general rule is that the 'question of arbitrability … is … for judicial determination" applies and the court itself should then undertake a full arbitrability inquiry in order to be 'satisfied' that the issue involved is referable to arbitration.

*Qualcomm, Inc. v. Nokia Corp.*, 466 F.3d 1366, 1374 (Fed. Cir. 2006) (emphasis added). Here, Choudhury's request for arbitration fails on *both* counts: 1) Choudhury did not clearly and unmistakably intend to delegate the determination of arbitrability to the arbitrator, and in fact denied the jurisdiction of the ICDR to make this determination; and 2) Choudhury's request for arbitration is wholly groundless, because he has waived any right to arbitration.

### A. Choudhury Did Not Clearly and Unmistakably Intend to Delegate The Determination of Arbitrability To The Arbitrator

Under the FAA, there is a general presumption that the issue of arbitrability should be resolved by the courts. *See, e.g., First Options of Chicago, Inc. v Kaplan*, 514 U.S. 938, 943 (1995); *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-47 (1964) ("The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the … agreement does in fact create such a duty"). Arbitrators may decide arbitrability only where the parties "clearly and unmistakably" delegate that issue to them. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986).

Choudhury's own words and conduct belie any intent to delegate the arbitrability determination to the ICDR. When Respondents first asserted claims against Choudhury in arbitration, Choudhury entered a special appearance to contest the ICDR's jurisdiction. He repeatedly denied that he was a party to the Operating Agreement and expressly repudiated the arbitration panel's jurisdiction to determine the arbitrability of his claims. In *First Options*, the United States Supreme Court held that nearly identical conduct – including a non-signatory's objection to arbitration and special appearance before the arbitrator to raise those objections – was powerful evidence that there was no "clear and unmistakable" intent to arbitrate the arbitrability question. The Court affirmed the Court of Appeals' decision to vacate the arbitration award against the non-signatory. 514 U.S. at 946. Accordingly, Choudhury's behavior before the ICDR is clear

4

PLAINTIFFS' OPP. TO DEFENDANT'S MOTION TO STAY ACTION PENDING ARBITRATION
CASE NO: 08-CV-5157-SBA

and unmistakable evidence of an intent *not* to delegate any such authority to arbitrators, and the question of whether these claims are arbitrable resides solely with the federal district court.

Choudhury contends that because the Operating Agreement expressly incorporated AAA rules, the parties to that Agreement had a clear and unmistakable intent to allow the arbitrators to determine arbitrability. Mot. to Stay at 7-8. But Choudhury has repeatedly asserted that he is *not* party to the Operating Agreement or its arbitration clause (and, indeed, has *no relationship* whatsoever with Clarium or the other Respondents). By his own admission, then, he could not have had any intent with respect to the Operating Agreement.[3] As his subsequent conduct before the ICDR reveals, he did not agree, clearly, unmistakably or otherwise, to submit arbitrability, or any other question, to an arbitrator in this matter. As a result, it falls to the Court – and not the arbitrators – to conduct a "full arbitrability inquiry" and to determine whether this matter is properly referred to arbitration. *See Qualcomm, Inc.*, 466 F.3d at 1371.

### B. Choudhury Has Waived Any Right To Arbitration And Therefore His Current Request For Arbitration Is Wholly Groundless.

Independent of the evidence demonstrating that Choudhury lacked the clear intent to arbitrate, the Court should also deny his Motion to Stay because Choudhury's request for arbitration is "wholly groundless." As discussed above, Choudhury has repeatedly denied that he was subject to the arbitration clause of the Operating Agreement or the jurisdiction of the ICDR. Choudhury, in fact, asserted that he has "no rights under the Operating Agreement containing the arbitration clause

---

[3] Choudhury's authorities are inapposite because they find the required "clear and unmistakable" intent where *parties* to an arbitration agreement had agreed to the AAA rules. *See* Mot. to Stay at 7-8 (citing authorities). Here Choudhury has argued repeatedly that he was not a party to that agreement. For the same reason, this is not a case like *Contec Corp. v. Remote Solution Co., Ltd*, 398 F.3d 205 (2d Cir. 2005), where the Court held on the facts of that case that the arbitrators *could* decide whether claims asserted by a non-signatory against a signatory were properly subject to arbitration. Contec LP (which had signed an arbitration agreement with Remote) merged with Contec Corporation (which had not); Contec Corporation ("Contec") was the surviving entity. In a subsequent dispute between Remote and Contec, Remote argued that Contec was not entitled to arbitration because it was not a signatory to the arbitration agreement. The court held that the agreement between Contec LP and Remote indicated a "clear and unmistakable" intent to delegate the arbitrability determination to the arbitrators, and the fact that Contec Corporation was not a signatory did not change that result because "there is or was an undisputed relationship between each corporate form of Contec and Remote Solution" and "the dispute at issue arose because the parties apparently continued to conduct themselves as subject to the 1999 Agreement regardless of the change in corporate form." *Id.* at 209. Here, in contrast, Choudhury expressly *denied* that he ever had a relationship or agreement with Clarium.

at issue – only Amisil has such rights." Mitchell Decl. Ex. A at 6.   These assertions are flatly inconsistent with Choudhury's current position, and therefore constitute waiver of any opportunity to arbitrate.

### 1. Choudhury's Prior Conduct Operates As A Waiver.

Choudhury's conduct falls squarely within the holding of a recent decision in which the Ninth Circuit affirmed the denial of a motion to compel arbitration. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005).  Defendants in *Brown* initially refused to participate in arbitration, despite an arbitration clause in the relevant agreement.  But when plaintiff later filed a complaint in state court, defendants filed a motion to compel arbitration.  The Ninth Circuit held that defendants' failure to participate in arbitration at the outset amounted to both a breach of the contract providing for arbitration and a waiver of the right to arbitration.  *Id.* at 1010, 1012.[4]  Indeed, the court held that requiring plaintiff to arbitrate her claims after defendants' initial refusal would actually undermine federal policies favoring arbitration, because it would give parties a "perverse incentive" to resist arbitration in the hope that their adversary would simply give up, but would still allow them to arbitrate if their adversary was persistent enough to file suit in court.  *Id.* at 1012.[5]  Choudhury has adopted precisely this wait-and-see strategy, and for the same reasons must be deemed to have waived any right to arbitrate.

Respondents attempted to counterclaim against Choudhury in the Amisil arbitration more than a year ago, prior to the commencement of discovery.  With the hearing of the Amisil matter set to commence on March 2, 2009, the considerations of efficiency that prompted Respondents' to include Choudhury in that proceeding have long since disappeared.  Now that Respondents have

---

[4] The District Court had denied the motion on grounds that the arbitration agreement was unconscionable.  The Ninth Circuit affirmed, but on the grounds that the party seeking arbitration had breached the arbitration agreement and waived any right to arbitration.

[5] *See also Brownyard v. Maryland Cas. Co.* 868 F. Supp. 123 (D.S.C. 1994) (where a party secured an arbitration agreement but then was unresponsive and dilatory in arbitration, it waived its chance to compel arbitration later).  If being generally unresponsive is sufficient to waive the right to arbitrate, affirmatively refusing to arbitrate as Choudhury has done creates an even stronger basis for finding waiver.

6

spent significant time and money pursuing their claims in an alternative forum,[6] Choudhury argues that he can simply reverse course and force arbitration upon the Clarium Plaintiffs. But while he may have changed his mind, he cannot change the effect of his past conduct. Choudhury has waived any right to arbitrate the claims asserted by Clarium and Mr. Thiel.

### 2. Questions Of Waiver By Prior Conduct Are For The Court.

Choudhury contends that questions of waiver are for the arbitrators to decide. Mot. to Stay at 10. That argument plainly fails to take account of and fails in light of this Court's duty under Section 3 of the FAA to assess whether Choudhury's assertion of arbitrability is "wholly groundless." See supra at 3. Indeed, the Ninth Circuit has recently held that issues such as waiver or a breach of the arbitration agreement excusing non-performance are gateway issues properly determined by the courts, not the arbitrators. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120 (9th Cir. 2008). Further, while it may otherwise be within the arbitrator's jurisdiction to determine questions of waiver as a result of delay or spoliation of evidence or other procedural issues related to the arbitration proceeding itself, whether a party has waived its arbitration right by engaging in conduct inconsistent with arbitration is a question for the court alone. *See e.g.*, *Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1012 (D. Minn. 2008) (courts decide whether a party has waived its right to arbitrate by actively participating in a lawsuit or taking other action inconsistent with the right to arbitration, while arbitrators generally decide claims of waiver that rest on the argument that arbitration would be inequitable to one party because relevant evidence has been lost due to the delay of the other); *see also JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008) (courts, rather than arbitrators, presumptively resolve claims that a party waived its right to arbitration through inconsistent conduct); *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 231 (3rd Cir. 2008) (whether party has waived its right to arbitrate by litigating is for court, not

---

[6] Indeed, the Clarium Plaintiffs have suffered prejudice in the form of substantial expenses, including costs to draft and file the State court complaint and to litigate Choudhury's action for declaratory relief, all of which would have been unnecessary had Choudhury not refused to arbitrate the counterclaims initially asserted against him in the arbitration proceeding. *See Brown*, 430 F.3d at 1012-13 (delay and costs incurred as a result of refusal to arbitrate constitute prejudice for purposes of waiver).

arbitrator).[7]

## C. Choudhury Cannot Compel Arbitration Of Mr. Thiel's Claims.

Choudhury's Motion to Stay cannot succeed for another independent reason: Choudhury has no contractual right to arbitrate claims asserted by Mr. Thiel. Choudhury ignores Mr. Thiel's claims altogether, apparently hoping that they will get lost in the shuffle and be ordered into arbitration along with Clarium's. But because Mr. Thiel is not a signatory to the Operating Agreement in his personal capacity, he cannot be compelled to arbitrate his claims.

Choudhury admits (and this Court has previously recognized) that Mr. Thiel did not sign the Operating Agreement on his own behalf, but rather only in his capacity as a principal of Clarium. Mot. To Stay at 3; 1/3/07 Report and Recommendation at 6 [Docket No. 79]. But as Choudhury previously argued, an agent signing on behalf of an organization is not personally bound by the terms of the contract and cannot be compelled to arbitrate his claims. *See Textile Unlimited, Inc. v. ABMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) ("'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit'") (quoting *AT&T Techs., Inc.*, 475 U.S. at 648); *see also* Mitchell Decl. Ex. A at 6. Indeed, this Court has already recognized that while non-signatories can in some instances compel arbitration of signatories, it is an entirely different equation when a signatory seeks to compel a non-signatory (such as Mr. Thiel) to arbitrate claims. *See* 1/3/07 Report at 7 [Docket No. 79]. Because Choudhury has no right to arbitrate Mr. Thiel's claims, they will remain before this Court.

---

[7] Choudhury mistakenly relies on *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) and *ATSA of Cal., Inc. v. Continental Ins. Co.*, 702 F.2d 172 (9th Cir. 1983) to argue that the question of waiver is for the arbitrators. *Howsam* involved a question of waiver pursuant to a time limit rule propounded by the arbitrating body at issue, NASD. The Court held that this procedural question was "presumptively for the arbitrator, not for the judge" and that the "NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it." 537 U.S. at 592-93. The Court further held that it was "reasonable to infer" that the parties intended to delegate that issue to the arbitrators. *Id.* at 593. In *ATSA*, the Ninth Circuit held (without explanation) that it was not an abuse of discretion to delegate the issue of waiver to an arbitrator. *Id.* at 175. But in its subsequent decisions in *Brown* and *Cox*, the Ninth Circuit made clear that waiver is a gateway issue properly resolved by the court under the FAA. *See Brown*, 430 F.3d at 1010-12 (deciding issue of waiver); *Cox*, 533 F.3d at 1120.

## IV. CONCLUSION

Choudhury's Motion to Stay should be denied both as to the claims asserted by Mr. Thiel and the claims asserted by Clarium.

DATED: January 20, 2009　　　　　　　HOGAN & HARTSON LLP

　　　　　　　　　　　　　　　　　　　By: */s/ Howard S. Caro*
　　　　　　　　　　　　　　　　　　　　　HOWARD S. CARO

　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs
　　　　　　　　　　　　　　　　　　　CLARIUM CAPITAL MANAGEMENT LLC and
　　　　　　　　　　　　　　　　　　　PETER THIEL